## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01122-WJM-KMT

JOHN GREEN,
JOAN GREEN, and
COURAGE TO CHANGE RANCHES HOLDING COMPANY d/b/a SOARING HOPE
RECOVERY CENTER, a Colorado non-profit corporation,

     Plaintiffs,

v.

RED ROCK RANCH, FOREST VIEW ACRES, AND CLOVENHOOF HOMEOWNERS
ASSOCIATION, a/k/a RED ROCK RANCH HOMEOWNER'S ASSOCIATION, a Colorado
non-profit corporation, and EL PASO COUNTY, COLORADO,

     Defendants.

---

### FIRST AMENDED COMPLAINT AND JURY DEMAND

---

**COME NOW** Plaintiffs John Green, Joan Green, and Courage to Change Ranches

Holding Company, d/b/a Soaring Hope Recovery Center (collectively "*Plaintiffs*") in the above-

captioned matter, by and through undersigned counsel, respectfully allege for their *First

Amended Complaint and Jury Demand* as follows:

### I. <u>INTRODUCTION</u>

1. Plaintiff Courage to Change Ranches Holding Company d/b/a Soaring Hope Recovery

   Center ("*Soaring Hope*") operates a group for recovering and former alcohol and substance

   abusers who are handicapped or disabled at a home owned by Plaintiffs John and Joan Green.

2. Due to Defendants' misplaced and unfounded fears of individuals that reside within Soaring

   Hope, Defendants have, both separately and jointly, taken affirmative steps to force Soaring

   Hope out of the neighborhood.

1

3. For example, Defendant El Paso County (the "*County*") has taken actions to impede Soaring Hope's operation of a group home by denying Soaring Hope's application for a special use permit, imposing restrictions on its operation, and amending the County Land Development Code to "zone-out" facilities like Soaring Hope.

4. Similarly, Defendant Red Rock Ranch, Forest View Acres, and Clovenhoof Homeowners Association a/k/a Red Rock Ranch Homeowner's Association (the "*HOA*") has modified and disparately enforced its restrictive covenants in an effort to target Soaring Hope and force it out of the neighborhood.

5. Together, these types of actions have significantly impeded the operation of Soaring Hope thereby causing Plaintiffs and their residents to suffer significant economic and emotional damages.

6. In light of Defendants discriminatory and unlawful conduct, Plaintiffs now seek redress under the Fair Housing Act, Americans with Disabilities Act, Rehabilitation Act, and the Fourteenth Amendment.

## II. JURISDICTION AND VENUE

7. This action arises under the laws of the United States and is brought pursuant to Title II of the Americans with Disabilities Act ("*ADA*"), 42 U.S.C. § 1201, *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("*RA*"), 29 U.S.C. § 794, *et seq.*, the Fair Housing Act ("*FHA*"), 42 U.SC. § 3604 *et seq.*, and 42 U.S.C. § 1983.

8. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.

9. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 12205, 42 U.S.C. § 3613(c)(2), and 42 U.S.C. § 1988.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the events giving rise to the claims asserted in this Complaint occurred in the state of Colorado.

### III. PARTIES

11. Plaintiff John Green, presently and at all times pertinent to this action, was a resident of and domiciled in El Paso County, Colorado.

12. Plaintiff Joan Green, presently and at all times pertinent to this action, was a resident of and domiciled in El Paso County, Colorado.

13. At all relevant times, Plaintiffs John Green and Joan Green (the "*Greens*") have owned the home located at 18375 Spruce Road, Monument, Colorado 80132 (the "*Spruce Road Home*"). The Spruce Road Home, which is located in El Paso County, is a two-story single-family residence with 6,300 sq./ft. of living space. The home is positioned on a three (3) acre lot and is composed of five (5) bedrooms, four and a half (4 ½) baths, and a four (4) car garage.

14. Plaintiff Courage to Change Ranches Holding Company d/b/a Soaring Hope Recovery, presently and at all times pertinent to this action, has been a Colorado non-profit corporation doing business in El Paso County, Colorado.

15. Defendant Red Rock Ranch, Forest View Acres, and Clovenhoof Homeowners Association, a/k/a Red Rock Ranch Homeowner's Association, presently and at all times pertinent to this action, has been a Colorado non-profit corporation doing business in El Paso County, Colorado.

16. Defendant El Paso County is a county located in Colorado and at all times pertinent to this action, has been responsible adopting, implementing, and enforcing the County's zoning ordinances and Land Development Code ("*LDC*").

## IV. <u>FACTUAL ALLEGATIONS</u>

*Beginning in 2011, Soaring Hope Began Operating Group Homes in El Paso County*

17. In 2011, Plaintiff Soaring Hope (then d/b/a Courage to Change Recovery Ranch) began operating a group home for former and recovering alcohol and substance abusers located at 5485 Appaloosa Drive, Evergreen, El Paso County, Colorado 80923 ("***Appaloosa Home***").

18. The Appaloosa Home is located on a 0.5 acre lot, but immediately surrounded by single-family residential neighborhood developments, as well as higher-density and commercial developments.

19. Group homes for the handicapped or disabled, including those for former and recovering alcohol and substance abusers, such as the Appaloosa Home, are protected under the FHA.

20. The LDC, which regulates the use of property in El Paso County, formerly and currently provides that certain facilities located in specific zoning areas are allowed to operate as of right, as "allowed use," while other types of facilities are permitted as "special use" with submission of an application for a special use permit (herein "***Special Use Permit***") to be approved by the County.

21. In 2012, Soaring Hope applied to the County to obtain a Special Use Permit for the Appaloosa Home.

22. At the time of Soaring Hope's application for the Special Use Permit for the Appaloosa Home, the LDC provided only for "rehabilitation facilities" and not "group homes." "Rehabilitation facilities" were only permitted by Special Use Application, and accordingly, the Appaloosa Home is referred to by the County as a "drug and alcohol rehabilitation facility."

23. In the 2012 Special Use Permit application for the Appaloosa Home, Soaring Hope described their operations as follows:

    a. As providing "addiction recovery modalities";

    b. Fully licensed by the State of Colorado Department of Human Services for substance use disorder treatment, intensive outpatient treatment, intensive residential treatment, and outpatient treatment;

    c. That residents do not have use of their own cars on site;

    d. That they are 4 full-time and 3 part-time staff on duty throughout the day and 1 staff member on duty throughout the night;

    e. That they employ 5 full-time and 3 part-time certified addiction counselors who come and go as needed

    f. That natural nutritional supplements or "compounds" as used to help clients heal without medication and promote recovery;

    g. That residents are transported to AA/NA meetings and to other activities such as hiking;

    h. That Soaring Hope has a "Talking Circle" open to the general public;

    i. That vehicles trips (counting coming and going each as one trip) average 48/week, 12/day on their busiest day, and 8/day on Saturdays;

    j. Only non-narcotic prescription medications are allowed;

    k. That the Appaloosa Home includes a neuroscience-therapy room and an open therapy and recreational area; and

    l. Residents are drug-tested.

24. The County's Planning Commission Summary notes state that:

a.  The facility has three bedrooms, one garage, and a barn;

b.  The facility is limited to 8 clients and 7 employees;

c.  Vehicular trips generate by the facility are limited to a maximum of (24) twenty-four trips per day, including visitation days;

d.  The application meets the special use review standards of Section 5.3.2.(B)(2) of LDC, including:

    i.   That the "facility appears residential in character";

    ii.  That the special use is consistent with the intent and purposes of the zoning district;

    iii. That the special use will be in harmony with the character of the neighborhood, and compatible with the existing and allowable land uses in the surrounding area; That the special use will not create undue traffic congestion or traffic hazards in the surrounding area.

    e.   The facility is limited to seven (7) employees and incidental group outings;

    f.   There are visitors on Sunday's from 9:00 a.m. to 6:00 p.m.; and

    g.   That average weekly trips for the facility (including visitor's day) are roughly 1.5 times that of a single-family residence and that this amount of traffic would not be anticipated to negatively impact County roads or the transportation network.

25. On November 8, 2012, the County summarily denied Soaring Hope's application for a Special Use Permit, effectively prohibiting it from operating the Appaloosa Home.

26. By rejecting its application, the County failed to provide Soaring Hope with a reasonable accommodation to the zoning policies contained in the LDC, in violation of federal law.

***Soaring Hope Files Civil Rights Complaint with Federal Government***

27. As a result of the County's decision to deny Soaring Hope's Special Use Permit for the Appaloosa Home, Soaring Hope submitted a formal complaint to the U.S. Department of Housing and Urban Development and the U.S. Department of Justice, requesting that the federal government investigate the County's zoning policies.

28. Acknowledging the validity of Soaring Hope's complaint, the federal government sent a letter to the County on November 13, 2013 requesting that it answer a series of questions and provide a variety of pertinent documents.

29. After engaging in further communications with the federal government, the County began the process of amending the LDC in an ostensible effort to come into compliance with the FHA, ADA, and RA.

30. At this time, a "Rehabilitation Facility" (herein "*Rehabilitation Facility*" or "*Rehabilitation Facilities*") were only permitted in single-family zoning districts by a Special Use Permit. The LDC did not provide for group homes for the handicapped or disabled. Therefore, someone seeking to operate a group home had to apply for a Special Use Permit.

31. Accordingly, the County sought to amend the LDC to add provisions for group homes for the handicapped or disabled to come into compliance with the FHA, ADA, and RA.

32. On January 29, 2014, El Paso County Attorney Diana K. May wrote the U.S. Department of Justice Civil Rights Division stating that the County would be amending the LDC to come into compliance with the FHA, ADA, and RA. Ms. May stated that the County would be amending the LDC "to provide that drug and alcohol rehabilitation group homes shall be classified as 'adult care homes' and shall be permitted as uses[sic] by right in the zone districts in the County in which single-family homes are permitted as uses by right." She

additionally stated that the LDC would be amended to provide that these "adult care homes" for the handicapped or disabled would be "occupied by up to 12 persons per home…"

33. Despite the County's admonitions to the federal government that they would make the foregoing amendments to the LDC, no such amendment was ever adopted by the County.

34. In the January 29, 2014 letter, the County Attorney also stated that the "County has reviewed the applicable law concerning local land use regulations of group homes for handicapped individuals and other protected classes under the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act. We agree that the [Soaring Hope] operation as presently configured and as described to the County by the operators of that facility [at the Appaloosa Home], qualifies under these Acts as operating a group home for disabled persons. Accordingly…[t]he County has not acted to enjoin or otherwise prevent [Soaring Hope] from operating at the Apaloosa[sic] address since it commenced operations on or about April 1, 2011…the [Soaring Hope] operation, as presently configured and represented to the County, qualifies for protections under federal law…"

35. Also on January 29, 2014, the County Attorney sent Soaring Hope a letter stating that the County will not act to prevent, enforce, or otherwise restrain Soaring Hope from operating the Appaloosa Home, provided that Soaring Hope continues to operate for the benefit of disabled or handicapped individuals in the manner previously represented.

### *The HOA Vehemently Opposes Amendments to LDC*

36. In February 2014, the HOA became aware of the County's plan to amend the LDC.

37. Around this very same time, the HOA also learned that Shadow Mountain Recovery ("*SMR*") had been leasing the Spruce Road Home to operate a group home for former and recovering alcohol and substance abusers since October 3, 2013.

38. Concerned with these developments, and in an attempt to exclude group homes like SMR from operating in the neighborhood, the HOA sought the legal advice of attorney Leonard Rioth.

39. Upon information and belief, the HOA retained Mr. Rioth to provide advice on how it could: (A) prohibit SMR from occupying the Spruce Road Home and (B) prevent the County from amending the LDC.

40. The HOA sought to exclude group homes like SMR, not based on any identified risks but based purely on stereotypes, unfounded fears, misperceptions, and archaic attitudes about people with disabilities.

41. On May 20, 2014, Mr. Rioth attended the Board of County Commissioners' meeting on behalf of the HOA.

42. At this meeting, Mr. Roith urged the County to maintain its requirement that group homes obtain a Special Use Permit under all circumstances.

43. In addition to Mr. Rioth, certain individual HOA members attended the meeting to voice their concerns about group homes. For example, as noted in the meeting minutes, HOA member Tom Guenther expressed his worry that "the proposed changes [to the LDC] open up the door for more of the types of houses like [Soaring Hope]."

44. Upon information and belief, the comments made Mr. Roith and Mr. Guenther were based on animus directed toward individuals with disabilities and were primarily aimed at placing political pressure on the County with respect to amending the LDC.

***The County Amends the LDC in an Effort to Comply with Federal Law***

45. On May 20, 2014, the County passed an amendment to the LDC (the "***2014 Amendment***") defining and regulating group homes in an effort to placate the concerns of federal investigators.

46. The 2014 Amendment added, "Group Home for Handicapped or Disabled Persons" to the LDC (herein "***Group Home(s) for Handicapped or Disabled Persons***").

47. "Group Home" under the LDC since the 2014 Amendment and presently is defined as follows:

> A home intended to provide a normal residential family setting for certain unrelated groups of people and limited to group homes for persons with mental illness, group homes for developmentally disabled persons, group homes for the aged, and group homes for handicapped or disabled persons.

48. "Group Home for Handicapped or Disabled Persons" under the LDC since the 2014 Amendment and presently is defined as follows:

> A group home for persons with mental or physical impairments which substantially limit one or more major life activities and including such additional necessary persons required for the care and supervision of the permitted number of handicapped or disabled persons. "Handicap" and "disability" have the same legal meaning. A person with a disability is any person who has a physical or mental impairment that substantially limits one of more major life activities; has a record of such impairment; or is regarded as having such an impairment. A physical or mental impairment includes, but is not limited to, hearing, visual, and mobility impairments, alcoholism, drug addiction, mental illness, mental retardation, learning disability, head injury, chronic fatigue, HIV infection, AIDS, and AIDS Related Complex. The term "major life activity" ma include seeing, hearing, walking, breathing, performing manual tasks, caring for one's self, learning, speaking, or working. Group homes for handicapped or disabled persons, particularly as they relate to recovering (not currently using) alcoholics and persons with drug addictions, may also be known as sober living arrangements.

49. "Group Home for the Aged (Including Assisted Living Residences)" since the 2014 Amendment and presently is defined as follows:

> A group home for persons who are 60 years of age or older, who do not need nursing facilities or skilled and intermediate care facilities, and who desire to live

in normal residential surroundings. The criteria, requirements, and restrictions for group homes for the aged shall be those prescribed by C.R.S. §30-28-115(2) (b) (except for distance separations) and in this Code. Group homes for the aged include assisted living residences as defined in C.R.S. §25-27-102 (1.3). "Assisted living residence" means a residential facility that makes available to three (3) or more adults not related to the owner of such facility, either directly or indirectly through an agreement with the resident, room and board and at least the following services: personal services; protective oversight; social care due to impaired capacity to live independently; and regular supervision that shall be available on a twenty-four-hour basis, but not to the extent that regular twenty-four-hour medical or nursing care is required. The term "assisted living residence" does not include any facility licensed in this state as a residential care facility for individuals with developmental disabilities, or any individual residential support services that are excluded from licensure requirements pursuant to rules adopted by the Department of Public Health and Environment.

50. Despite the County's purported attempts to come into compliance with federal law, the 2014 Amendment made several significant changes to the LDC, each of which was intended to and/or had the effect of discriminating against group homes that serve individuals with handicaps and disabilities.

51. First, the LDC was amended to provide for Group Homes for Handicapped or Disabled Persons as "allowed use" in residential zoning districts without the need for Special Use Permit, but the occupancy was deliberately limited to five (5) or fewer residents.

52. This five (5) person occupancy limit was imposed against the advice of counsel for the County.

53. While this change represented an improvement from prior versions of the LDC, it nevertheless continued to impose disparate terms on group homes that serve individuals with handicaps and disabilities. This disparate treatment is evidenced by the fact that similarly situation facilities are not subject to the same restrictions as group homes.

54. Similarly situated facilities, such as family care homes, child care centers, and group homes for the aged, are allowed to house eight (8) to twelve (12) residents as "allowed use" in the same residential zoning districts without needing to obtain a Special Use Permit.

55. Moreover, this change was made against the recommendation given by the El Paso County Planning Commission who suggested capping "allowed use" occupancy at twelve (12) and various County staff members, who suggested capping "allowed use" occupancy at eight (8).

56. Second, the LDC was amended so that even when a group home is able to obtain a Special Use Permit by approval of the County, it cannot be occupied by more than ten (10) residents.

57. The LDC provides that other similarly situated facilities, such family care homes, child care centers, and group homes for the aged can have unlimited occupancy or a maximum occupancy of twelve (12) with a Special Use Permit.

58. No general occupancy limits apply to all residents of El Paso County.

59. The most restrictive occupancy limits apply *only* to group homes for those with handicaps or disabilities.

60. Third, the 2014 Amendment added a section entitled "Standards Applicable Only to Group Homes," which imposed new and unique burdens *only* on group homes for the *handicapped or disabled*.

61. Under the "Standards Applicable Only to Group Homes," group homes for handicapped or disabled persons are only permitted to conduct meetings or gatherings at the home that are "consistent with a normal residential family setting" and are prohibited from conducting "types of treatment activities or the rendering of services in a manner substantially inconsistent with the activities otherwise permitted in the particular zoning district."

62. Finally, the 2014 Amendment modified the LDC to effectively prohibit Rehabilitation Facilities from operating in residential areas while simultaneously broadening the definition of such facilities to encompass activities of group homes for the handicapped or disabled, including but not limited to Soaring Hope.

63. None the foregoing amendments to the LDC are supported by any legitimate, non-discriminatory reason, such as the size of the home, the amenities offered, the number of staff available, or other considerations pertaining to the safety and welfare of residents.

64. Upon information and belief, these discriminatory modifications were largely enacted as a result of political pressure emanating from the community's bias against the handicapped and disabled.

65. The LDC now defines a "Rehabilitation facility" as "[a]n institutional use-type facility, and not a group home, whether public, quasi-public, not-for-profit, providing accommodation, treatment, and medical care for patients suffering from alcohol or drug-related illness."

66. The LDC definition of a "Rehabilitation Facility" encompasses activities of group homes like Soaring Hope with residents who are protected by the FHA, ADA, and RA.

67. Upon information and belief, the County made these amendments in an effort to covertly zone out Soaring Hope and other similarly situated facilities. Prior to the 2014 Amendment, a Rehabilitation Facility was allowed by Special Use Permit where the Spruce Road Home is located.

68. Under the present LDC, a "Rehabilitation Facility" is allowed only in RM-12 and RM-30 residential zoning districts (Multi-family high-density dwellings) with a Special Use Permit and not in any other residential zoning districts, including all single-family zoning districts

(RR-5, RR-2.5, RR 0.5, RS-2000, RS-6000, RS-5000, RT, MPH, MHS, MJPR, and RVP districts). It is allowed in three commercial zoning districts and "obsolete districts."

69. RM-12 and RM-30 residential zoning districts represent an extremely small minority of zoning districts and a minuscule part of residential land space in El Paso County.

70. Upon information and belief, the LDC was amended in 2009 in response to an appeal of a zoning interpretation to include a "Rehabilitation Facility" designation and to provide that such a facility was a special use in many zone districts, including residential districts.

71. Leading up to the 2014 Amendment, the Greens received numerous letters and SMR was bombarded with negative comments via teleconferences and at County board meetings.

72. In light of the issues with the County and constant pressure from the HOA to relocate, SMR decided to stop operating out of the Spruce Road Home on or around June 2014.

73. On July 9, 2014, the County sent Soaring Hope a letter informing Soaring Hope of the 2014 Amendment and reiterating that Soaring Hope could continue its operations at the Appaloosa Home, as long as it now only had five (5) residents. The letter further states that if Soaring Hope wanted to increase its occupancy, it would need to submit a Special Use Permit application, which is a request for reasonable accommodation.

***The Greens Began Renting the Spruce Road Home to Soaring Hope in September 2014.***

74. In September 2014, the Greens began renting the Spruce Road Home to Soaring Hope to use as a group home for former and recovering alcoholics and substance abusers.

75. All residents of the Spruce Road Home, as former and recovering alcoholics and substance abusers who have mental or physical impairments that substantially limit one or more of their major life activities, have a record of such impairment, or are regarded as having such an impairment, are handicapped or disabled.

76. At the Spruce Road Home, residents live in a "family" like living environment under the supervision of Soaring Hope staff.

77. The basic goal of Soaring Hope is to provide former and recovering alcohol and substance abusers with a stable and peaceful environment in which to maintain their sobriety and develop life skills to enable them to become independent and integrate back into society.

78. Accordingly, it is vital that group homes like Soaring Hope be located in residential areas where they can feel like they are part of the community and not segregated from the rest of society.

79. Moreover, Soaring Hope does not, and has never, provided *any treatment* for current addicts and residents are prohibited from using alcohol and illegal substances. Accordingly, Soaring Hope has never provided detox services or other treatment services for current addicts, such as methadone treatment, at the Spruce Road Home. Residents found using alcohol or illegal substances are promptly evicted from the Spruce Road Home.

***In April 2016, Soaring Hope Submitted a Request to El Paso County to Increase the Number of Persons Living at the Spruce Road Home***

80. Since the 2014 Amendment to the LDC was enacted, the Spruce Road Home has been located within a residential zoning district where group homes for handicapped or disabled residents can operate by "allowed use" without a Special Use Permit, provided that they have five (5) or fewer residents.

81. On or about April 27, 2016, Judith Miller, on behalf of Soaring Hope, submitted an application for a Special Use Permit to increase the number of residents living at the Spruce Road Home from five (5) to ten (10) residents (the "***2016 Special Use Permit Application***").

82. The 2016 Special Use Permit Application was submitted pursuant to Section 5.2.2(D)(3) of the LDC which requires that a Group Homes for Handicapped or Disabled Persons seeking to house six (6) to ten (10) residents submit a Special Use Permit application.

83. In contrast, other similarly situated facilities that do not house handicapped or disabled residents, such as family care homes, child care centers, and group homes for the aged, need not apply for a Special Use Permit unless they are seeking to house nine (9) or more residents.

84. Section 5.2.2.(D)(3) and Table 5-3 of the LDC provide that a Special Use Permit application constitutes a request for a reasonable accommodation under the FHA.

85. The requested accommodation was sought in recognition of the fact that: (A) group homes with eight (8) to twelve (12) residents are able to offer a living environment that is significantly more conducive to addressing the disabilities typically associated with former and recovering alcoholics and substance abusers, and (B) that it was not economically feasible to house only five (5) residents.

86. Soaring Hope's request for reasonable accommodation was reasonable and necessary to afford disabled persons housing.

87. In Soaring Hope's 2016 Special Use Permit Application, Soaring Hope communicated to the County that limiting the occupancy at the Spruce Road Home to five (5) persons was not "economically feasible." Accordingly, the County was well aware that by denying Soaring Hope's application, Soaring Hope would not be able to continue its operations.

***The County Begins to Discriminatorily Enforce the LDC Against Soaring Hope***

88. On or about July 12, 2016, the County sent a letter to Soaring Hope and the Greens notifying them that the County Executive Director Craig Dossey had determined that the Spruce Road

Home was a "Rehabilitation Facility" and not a "Group Home for Handicapped or Disabled Persons," as defined by the LDC.

89. The letter informed Soaring Hope that its application would "not be further processed and returned" and that an enforcement file was being opened.

90. The County denied Soaring Hope's 2016 Special Use Permit Application and request for reasonable accommodation by refusing to consider the application or request as required under the LDC and federal law.

91. The County had the opportunity to make a final decision with respect to Soaring Hope's request and had the ability to conduct a meaningful review of the requested accommodation to determine if such an accommodation was required by law and not only refused to do so, but instigated zoning enforcement proceedings.

92. Soaring Hope's request for reasonable accommodation was reasonable and necessary.

93. The request for reasonable accommodation was reasonable because it did not require any actions to be taken by the County or cost to be imposed on the County, other that which is incidental to the review of any Special Use Permit Application submitted by any person or entity within El Paso County. Accordingly, the request imposed no fundamental alteration in the nature of the program or undue financial or administrative burdens.

94. The request to increase occupancy from five persons to ten persons is also reasonable in light of the fact that similarly situated facilities, such as family care homes, child care centers, and group homes for the aged are allowed to house eight (8) to twelve (12) residents as "allowed use" without needing to obtain a Special Use Permit and are permitted to have unlimited or a maximum occupancy of twelve (12) with a Special Use Permit.

95. The request for reasonable accommodation was necessary. If the County had not restricted group homes for the disabled to five persons or denied Soaring Hope's reasonable accommodation request to increase the number of persons at the Spruce Road Home to ten persons, Soaring Hope would have been able to provide housing and facilitate the recovery of 60 persons per year who were not presently addicted to drugs or alcohol. Accordingly, housing has been denied to approximately 240 persons since 2014 and 120 persons since July 2016.

96. In order to cure its alleged violations of the LDC, the County gave Soaring Hope three options: 1) appeal the County Director's interpretation to the Board of County Commissioners at the cost of $887.00; 2) apply for a variance of use at the cost of $4,237.00; or 3) bring the Spruce Road Home into compliance with County law by eliminating its alleged rehabilitation services and by reducing the number of residents to comply with standards imposed on Group Homes for Handicapped or Disabled Persons under the LDC.

97. Under Section 5.3.4. of the LDC, if a person or entity wishes to use property in a manner which is not allowed in the applicable zoning district, the County may grant a variance of use.

98. As the basis for the determination that the Spruce Road Home was a Rehabilitation Facility and not a Group Home for Handicapped or Disabled Persons under the LDC, the county cited several false and inaccurate facts, including, but not limited to:

   a.   that "medically assisted drug and alcohol dependence rehabilitation is clearly the primary purpose of the patients' stay at the [Spruce Road Home]…";

   b.   the materials provided with the application "clearly describe the program as drug treatment program…";

   c.   that there was titration to reduce drug dependency over time administered by the staff; and

18

    d.   that Soaring Hope sold nutraceutical supplements after the patient left the home and that this is a commercial activity.

99. As the basis for the determination that the Spruce Road Home was a Rehabilitation Facility and not a Group Home for Handicapped or Disabled Persons under the LDC, the County also made numerous arbitrary and capricious determinations, including, but not limited to:

    a.   That the "home is currently in use for therapeutic services for addiction";

    b.   there are staff with medical backgrounds present and available each day and that the "staff-to-patient ratio greater than one-to-one is entirely inconsistent with a group home facility" but "consistent with a rehabilitation facility";

    c.   that due to the highly structured schedule and the fact that patients do not have outside lives or vehicles on site, the patients are not residing at the Spruce Road Home in a "group home context" to "obtain the benefits of family-like residential setting", but an "institutional rehabilitation facility," residing there "for the sole purpose" of receiving treatment;

    d.   that the presence of interns who are observing, but are not involved in care, is a "non-group home activity", but one of a "rehabilitation facility";

    e.   that "the number and frequency of staff trips to the Spruce Road Home is well in excess of what would be considered for a residential group home operation, and instead is in the nature of a commercial operation or rehabilitation facility.";

    f.   former clients return for "circle talks"; and

    g.   that the "treatment elements" of the Spruce Road Home as "extensive" including, "EEG neurotransmitters, vitamins, therapy of several types, cognitive behavioral therapy, yoga, 20 hours of classes and therapy per week…"

100.    The July 12, 2016 letter also notes that "these treatment elements and programs, while laudable and doubtless useful to the paients at the facility and the members of the public that are invited to participate in the facility's various programs as described, render the operation of a rehabilitation facility rather than merely a residential group home for persons suffering from disability.

101.    The supposed "rehabilitation facility" activities in which Soaring Hope was engaging in at the Spruce Road Home were considered "group home" uses by the County, as confirmed in its January 29, 2014 letter, when considering the operations of the Appaloosa Home as "group home" use protected by federal law, including:

    a.  Only non-users/non-addicted persons are permitted at the home;

    b.  That "therapeutic" or "counseling" services are provided by licensed professionals who are present at the home;

    c.  The fact that residents do not have their own cars;

    d.  Nutritional supplements (a.k.a. vitamins) are provided;

    e.  Trips to and from the residence by staff persons and including transportation of residents to AA/NA meetings and recreational activities like the YMCA and hiking;

    f.  "Circle talks" among residents are conducted that are open to the public;

    g.  Neuroscience therapy/EEG therapy; and

    h.  Drug testing of residents.

102.    On March 3, 2015, Judy Miller of Soaring Hope met with the County for an "Early Assistance Meeting." The County meeting minutes show that the County was aware that aware that Soaring Hope was operating in the same manner as it was previously permitted to operate at the Appaloosa Home and that use of the Spruce Road was the same as that at the

Appaloosa Home. Facts of which the County was aware include, but are not limited to: 1) that residents are drug tested and must be sober; 2) that Soaring Hope uses neurotransmitters (EEGs); 3) residents are given neuroceuticals (vitamins); 3) that therapy is conducted by counselors; 4) that Soaring Hope does not titrate illegal drugs; 5) residents do not have cars; 6) 11 staff persons and residents come and go from the home, including to transport residents to AA meetings and extracurricular activities like hiking; and 7) that residents do not detox at the home.

103.   The County was aware of Soaring Hope's operations at the Spruce Road Home from at least March 3, 2015, but did not inform Soaring Hope that it was operating a "rehabilitation facility" or instigate any code enforcement proceedings for operating a "rehabilitation facility" between March 3, 2015 and August 31, 2016, and after the HOA sent a "Request for Governmental Action" to enforce the LDC.

104.   The County acted to assist Soaring Hope in submitting the 2016 Special Use Permit Application, which is a request for reasonable accommodation, for uses it later claimed were "Rehabilitation Facility" uses requiring a variance application.

105.   The March 3, 2015 "Early Assistance Meeting" County minutes also state that Soaring Hope "will have to prove that the proposed special use is for a group home for 10 persons that would fall under the definition of a Group Home for Handicapped or Disabled persons and that it is not a Rehabilitation Facility" and that it is Soaring Hope's "burden to make the proof."

106.   The March 3, 2015 "Early Assistance Meeting" County minutes state that "this Special Use request does not follow the County's approval criteria for all other Special Use requests but is reviewed based on the criteria derived from the Fair Housing Amendments Acts…"

and that the "Special Use can be processed either administratively or by a public hearing…"
It also states that the "DSD Director will approve, deny, or approve with conditions" or if
there is a public hearing, the "Board of County Commissioners will make the final decision
to approve, deny, or approve with conditions."

107.    The March 3, 2015 "Early Assistance Meeting" County minutes state that County
Attorney Emmons asked Soaring Hope questions based on FHAA considerations as to how
the proposed use is reasonable and necessary and a benefit to Courage to Change and its
clients, to which Ms. Miller responded that Soaring Hope would be able to help 60 or more
people a year and employ people within the community, that the residents would benefit
from interaction with more people, and the increase will allowing Soaring Hope to meet
payroll.

108.    Also, on July 12, 2016, County Attorneys Diana K. May and M. Cole Emmons sent a
letter to the U.S. Department of Justice Civil Rights Division stating that County Executive
Director Craig Dossey had determined that Soaring Hope's operations at the Spruce Road
Home is a "'rehabilitation facility' within the meaning of the County's land use regulations,
in that it is a highly structured drug and alcohol rehabilitation program, the primary purpose
of which is to treat drug and alcohol addicted persons through a variety of medical
procedures, therapy classes, and titrated drug and alcohol withdrawal programs…the facility
employs a staff-to-patient ratio of more than one-to-one and involves a number of outside
persons, programs and activities which are not consistent with a group home. These non-
group home programs include an internship program…'circle talks,' which involve past
(nonresident) patients and others; and sale of vitamins and medicine to patients and members
of the public."

109. On July 13, 2016, Ms. Miller sent a letter to the County requesting that "rather than returning our application fee, we would appreciate being considered for the LDC Section 1.15 a 'rehabilitation facility.'"

110. On August 8, 2016, the HOA submitted a "Request for Governmental Action" letter to the County containing a number of falsehoods about Soaring Hope and requesting that the County takes actions to enforce the LDC.

111. On August 10, 2016, the County sent Soaring Hope an email stating "if you currently have obligations with residents that result in more than 5 handicapped or disabled persons as residents at the [Spruce Road Home] location, you are in violation of the zoning." The same day, Soaring Hope responded to the County stating, "just so you know we are always in compliance with 5 or less residents [at the Spruce Road Home]."

112. On August 11, 2016, Soaring Hope sent a letter to County informing the County that it would be taking "our Soaring Hope rehabilitation (therapy sessions) to a commercial office/conference room…By September 1, 2016, we will be transporting our clients to the West End Center in Monument."

113. The August 11, 2016 letter also asked that "as soon as possible [we] would like to meet with you regarding initiating the process for obtaining the variance and moving forward with receiving a Special Use Permit for our program."

114. Despite Soaring Hope's August 11, 2016 letter, on August 31, 2016, the County sent a "Notice of Violation" to Soaring Hope and the Greens alleging that they had violated the LDC by operating a "Rehabilitation Facility" out of the Spruce Road Home. The County,

however, failed to explain why Soaring Hope's decision to move its "rehabilitation" services to an off-site location did not cure its alleged LDC violations.

115.    Section 11.3.2.(A) of the LDC requires that "if probable cause exists to believe that a violation [of the zoning code] has occurred, notice of the violation shall be sent...[and] the notice of violation shall specifically describe the nature of the violation." The August 31, 2016 letter from the County does not describe what activities Soaring Hope was conducting that constituted Rehabilitation Facility activities.

116.    Section 11.3.2(A) of the LDC also states that "the notice of violation shall provide that the alleged violator may request additional time to correct the violation." No such statement was included in the August 31, 2016 letter.

117.    On September 23, 2016, Soaring Hope sent a letter to the County informing it that "in order to be in compliance with the designated Soaring Hope group home for 5 residents, we have moved the Addiction Recovery Therapeutic component to the West End Office center…[and] we are transporting clients daily to and from the Center with our company van...all therapies are held off-site, as are the regular staff meetings…the residents hold a house Talking Circle on Tuesday evenings and we have ended the practice of welcoming outside participants. Other evenings residents are transported to 12 Step Fellowship meetings…when a new resident checks in, we transport them to Memorial North Hospital for Medical Clearance." A lease for the West End Center dated September 7, 2016, was attached.

118.    Despite Soaring Hope's September 23, 2016 letter, on October 11, 2016, Deputy Director Mark Gebhart issued a memo to the County stating that "conflicting information has been provided regarding the status of the facility and the intended direction forward," that "no application to establish a Rehabilitation Facility has been received," that "operation of the

facility as a Rehabilitation Facility did continue after the established deadline, and in some manner possibly continues to the present," and that "[Soaring Hope] has provided emails and written correspondence (originally received October 5, 2016 and revised October 7, 2016) to support their contention that they are presently functioning at the site as a group home for handicapped or disabled for 5 or less persons, and are no longer operating as a Rehabilitation Facility at the property." The memo concluded with the recommendation that the "Board of County Commissioners authorize the County Attorney to pursue litigation in order to bring the [Spruce Road Home] into compliance with the [LDC]." The memo makes no mention of the August 8, 2016 and September 23, 2016 letters from Soaring Hope.

119.    On October 12, 2016, the County sent a letter to Soaring Hope and the Greens informing them that a public hearing would be held on October 18, 2016 to determine if Soaring Hope's use of the Spruce Road Home was in violation of the LDC. The letter, however, makes no mention that this is a show cause hearing.

120.    On October 18, 2016, the Board of County Commissioners held its regular meeting. Included on the agenda was the request to have the Board of County Commissioners authorize the County Attorney to pursue litigation in order to bring the Spruce Road Home into compliance with the LDC for the operation of a Rehabilitation Facility.

121.    The Board of County Commissioner heard testimony and ultimately approved a stipulation between Soaring Hope and the County (the "**Stipulation**").

122.    Rick Bolin, president of Soaring Hope, represented Soaring Hope at the County meeting. He received the draft of the Stipulation the morning of the hearing. He was told by County Deputy Director Mark Gebhart that he had to sign the Stipulation or the Board of County Commissioners would vote to shut down Soaring Hope.

123. Mr. Green was called the morning of the County meeting and had the preliminary stipulation read to him over the phone because he was at the bedside of his ailing wife who was battling her fifth different cancer and undergoing chemotherapy. Mr. Green had no opportunity to consult with an attorney and had to make a decision on the phone because he was unable to attend the meeting. He was told that without his agreement to the Stipulation, Soaring Hope could not continue at the Spruce Road Home. Under these circumstances, Mr. Green agreed to the Stipulation.

124. The initial Stipulation proposed to the Board of County Commissioners included the following terms: that Soaring Hope would admit to a violation of the LDC by operating a Rehabilitation Facility; that Soaring Hope would curtail any rehabilitation facility use immediately; that the County would stay seeking authorization to pursue litigation against Soaring Hope for violations of the LDC for 30 days to allow for finalization of a "variance application"; that Soaring Hope would submit to County inspections to prove that it was not operating as Rehabilitation Facility; and that if the "variance" is approved, the County would not enforce the violations of the LDC, but if denied, the County would immediately enforce.

125. Mr. Bolin then testified that Soaring Hope was agreeing to the Stipulation and that the "therapeutic" activities were not occurring at the Spruce Road Home and had been moved to another site.

126. Bryce Meighan, attorney for the HOA, then addressed the Board of County Commissioners and asked that the HOA include additional terms in the Stipulation.

127. County Attorney Emmons addressed the Board of County Commissioners and stated that after the County had determined upon reviewing the 2016 Special Use Permit Application that Soaring Hope was a Rehabilitation Facility and not a Group Home for Handicapped or

Disabled Persons, the County had given Soaring Hope three options. He stated that because Soaring Hope had not committed to any of the options, a notice of violation was filed and the present hearing was set for a "show cause" hearing on why the County should not authorize enforcement proceedings. He stated that instead, Soaring Hope had agreed to the Stipulation in lieu of the "show cause" hearing. He stated that Mr. Bolin would be providing the County with a list of Soaring Hope's activities so the County could review and determine what was and was not Rehabilitation Facility use.

128.     County Attorney Emmons stated that certain conditions of the Stipulation were not legal, but felt that they were permissible under these circumstances because Soaring Hope was agreeing to them.

129.     County Attorney Emmons stated that he disagreed with the HOA being able to add additional conditions to the Stipulation. Nonetheless, a recess of the proceedings was held for the HOA to add additional conditions to the Stipulation.

130.     At the insistence of the HOA and at the request of the Board of County Commissioners, the following additional terms were added to the Stipulation: that parking at the Spruce Road Home be limited to 3 vehicles in the garage and 4 vehicles in the driveway; that Soaring Hope would submit a comprehensive list of current activities/uses at the Spruce Road Property so that County staff could identify uses that are "Rehabilitation Facility" uses; that Soaring Hope would remove the identified "Rehabilitation Facility" uses within 24 hours; that inspections of the Spruce Road Home would be conducted without notice; and that copies of the inspections would be provided to the HOA.

131.     The Greens were never informed of these additions to the Stipulation.

132.    Soaring Hope did not have the opportunity to consult with an attorney before having to agree to the Stipulation.

133.    County Attorney Emmons stated that the County would work with Soaring Hope to define what constituted Rehabilitation Facility uses which needed to be removed from the Spruce Road Home.

134.    At the October 18, 2016 hearing, Mr. Bolin stated that Soaring Hope has at no point ever had more than five (5) residents on any given day and that he could provide evidence to the County showing this fact. He also stated that under the LDC, a Group Home for Handicapped or Disabled Persons is allowed to perform activities for "support, care, or supervision" and he would like to get a definition as to what that means and what Soaring Hope can and cannot do at the Spruce Road Home. He further asked how long Soaring Hope would have to become compliant with the Stipulation when Soaring Hope does not know yet what activities qualify as "support, care or supervision" or "therapy."

135.    No mention was made by any County official that in response to the letters from the County, Soaring Hope had sent letters on August 8, 2016 and September 23, 2016 to inform the County that it would be moving "rehabilitation" services from the Spruce Road Home to another location and to confirm that it had done so.

136.    Beginning November 1, 2016, the County conducted surprise inspections of the Spruce Road Home. Approximately six (6) inspections were conducted between November 1, 2016 and July 12, 2017. The inspection reports include the County confirming that there were five (5) or less residents at the Spruce Road Home. The County did not report any violations that the Spruce Road Home was operating a Rehabilitation Facility.

137.    Between February 27, 2017 and February 28, 2018, Soaring Hope received at least eight (8) emails from the County asking Soaring to explain events that had occurred at the Spruce Road Home. The County sent those emails in response to receiving emails from neighbors in the area surrounding the Spruce Road Home.

*Red Rock Ranch HOA and Covenants*

138.    The HOA purports to have restrictive covenants recorded with the El Paso County Clerk and Recorder on June 19, 1995, in Book 6667 at the beginning of Page 679 as Document No. 095059488 (the "***1995 Covenants***").

139.    Section 19 of the 1995 Covenants states, in part, that "no noxious or offensive trade shall be carried on upon any lot or property" and prohibits any activity "which may be or become an annoyance or nuisance to the neighborhood."

140.    Similar, but not identical covenants were recorded with the El Paso County Clerk and Recorder on November 8, 2002, as Document No. 202196500 and renewed by recording on May 24, 2010, as Document No. 210048071 (the "***2002/2010 Covenants***").

141.    Paragraph 19 of the 2002/2010 Covenants states that "no trade shall be carried out upon any lot or property…which may be or become a nuisance to another lot owner(s)." The 2002/2010 Covenants also prohibit commercial business or commercial use.

*HOA Targeting of Greens and Soaring Hope*

142.    Since Soaring Hope started using the Spruce Road Home in September 2014, the HOA has made a deliberate and concerted effort to harass Soaring Hope and its residents to force them out of the neighborhood.

143.     Counsel for the HOA has continually sent the Greens and Soaring Hope letters between 2014 and the present alleging violations of the covenants by operating a "business" in an effort to force Soaring Hope out of the neighborhood.

144.     On information and belief, HOA President Elizabeth Lonnquist made a promise at an HOA board meeting that if she was elected president of the HOA, she would get rid of Soaring Hope.

145.     On information and belief, Ms. Lonnquist was found going through the trash at the Spruce Road Home on June 19, 2017, at approximately 10:30 p.m.

146.     Ms. Lonnquist continually takes pictures of the property and forwards them to the County.

147.     Between 2014 and the present, the HOA and its members have taken a myriad of photographs of the Spruce Road Home and registered complaints with various County authorities.

148.     Complaints to the County include objections to the number of the cars parked on the property at the Spruce Road Home, the fact that cars were coming and going from the Spruce Road Home, and that a homeowner found a mini liquor bottle in the vicinity of the Spruce Road Home. Complaints also include claims that Soaring Hope is a "business" and accusations about the credibility, integrity, or qualifications of Soaring Hope staff.

149.     On November 7, 2016, a "next door neighbor" reported a possible "illegal burn" at the Spruce Road Home. The responding fire department found several residents outside gathered around a chiminea wood burning stove.

150.     These actions, taken by the HOA and its members, have diverted the Greens' and Soaring Hope's resources by forcing them to repeatedly respond to the County. Moreover, the HOA's

actions resulted in the invasion of the quiet enjoyment and privacy of the residents of the Spruce Road Home.

151.    The HOA and its members have perpetuated misinformation and falsehoods about Soaring Hope and the Greens by email, letters, website postings, TV interviews and at County board meetings to the community and County officials.

152.    For example, an HOA newsletter states that "The [Soaring Hope] operation has taken actions that indicates that they may attempt to officially expand beyond a Group Home environment and progress to a licensed business. We are in deeper discussion with our lawyer as to what actions we can take to stop the property from being rented to a tenant that is a nuisance to the neighbors and a violation of the covenants. The board is considering an early renewal and revision of the covenants to bring the language up to date with modern issues."

153.    The HOA also encouraged others to take actions to further removing Soaring Hope from the Spruce Road Home.

154.    For example, the HOA posted a "BOCC Meeting Notice" to their website addressed to residents and informing them that a meeting had been scheduled for the next Board of County Commissioners meeting to pursue litigation against Soaring Hope. The post encourages residents to attend and provide comment to "help [the HOA's] position."

155.    The "Red Rock Ranch News" website discusses Soaring Hope and encourages people to "voice your opposition" and to say "no to businesses that violate our Home Owners Covenants and want to change our neighborhood zoning for profit based reasons." The website lists "things you can do" including signing petitions, emailing the County, and attending County meetings.

*The 2017 Amendment to the Covenants*

156.    On or about December 5, 2016, the HOA sent a letter to residents to submit a proposed

amendment to the 1995 Covenants to members of the HOA (the "***2017 Amendment***").

157.    The 2017 Amendment, in part, states that the following shall be added to the 1995

Covenants:

> 6(a). <u>Single Family Requirement</u>. Each Lot shall be used and/or occupied only for
> single-family residential purposes. "Single Family" is defined as "one or more
> persons who are related by blood, marriage, civil union, or legal adoption
> occupying and/or using the single family home on the Lot as a single
> housekeeping unit". No Lot shall be used and/or occupied for non-single family
> and/or non-residential purposes; such prohibition shall include, without limitation,
> group home, vacation rental, bed and breakfast, hotel, boarding house, apartment
> building, any housing for transients, or any other occupancy or use as determined
> by the Board of Directors of the Association in its discretion to be similar to the
> foregoing prohibitions or within the intent of these prohibitions. Any violation of
> this restriction shall allow the Board to impose fines for such violations and/or
> allow the Board to obtain injunctive relief without the posting of a bond, and the
> Board shall recover all of its attorney's fees and expenses of enforcement.

> (the "***Single-Family Requirement***").

158.    The 2017 Amendment not only eliminates living arrangements by people who are not

related by blood, marriage, civil union or adoption but also specifically eliminates groups

homes from the neighborhood to target the residents of Soaring Hope who are living in a

group and are not related by blood, marriage, civil union, or adoption.

159.    The 2017 Amendment was ostensibly passed by a vote of the HOA residents pursuant to

the Covenants and recorded with the El Paso County Clerk and Recorder on March 8, 2017,

as Document No. 217027330.

160.    The 2017 Amendment was adopted specifically for the purpose of targeting the Greens

and Soaring Hope to force them to remove the group home at the Spruce Road Home.

161.    HOA letters, newsletters, and "news" bulletins show that the HOA passed and sought to enforce the 2017 Amendment and covenants for the sole purpose of discriminating against the residents of Soaring Hope.

162.    In an August 23, 2016 post to the HOA website the HOA stated that it would be "rewording" the covenants to "address strengthening the language regard [sic] what constitutes a single family residence and what is an acceptable home business."

163.    On information and belief, other businesses operating in the neighborhood have not been subject to covenant enforcement proceedings by the HOA.

164.    The "covenant issues" page on the HOA website shows only postings about Soaring Hope.

165.    The December 5, 2016, letter sent to residents proposing the 2017 Amendment states that the purpose of the amendment is to "clarify and refine the meaning of and the requirement for the HOA to consist of Single Family Residences. We are doing this to address recent usages of residential homes that the board feels is not keeping with the desires of the residents…"

166.    In a posting to the HOA website on December 13, 2016, the HOA stated that "We are continuing to monitor this situation [at the Spruce Road Home] and are hoping the covenant changes will bolster the HOA Board position that this is a nuisance business that is not in line with a Single Family Residence."

167.    On or about May 2, 2017, the HOA adopted a "Covenant Enforcement Policy" providing for a procedure for the HOA to address covenant violations and assess fines against the violator. Upon information and belief, the HOA did not previously have a covenant enforcement policy or procedure.

168.    Upon information and belief, the "Covenant Enforcement Policy" was adopted by the HOA specifically for the purpose of targeting Soaring Hope in attempt to remove its group home from the neighborhood.

169.    An HOA newsletter dated May 2017 discusses the passage of the 2017 Amendment and states that "with the passing of the Covenant Changes, the board has created a policy with the process of how to proceed with enforcement" and provides a link to the "Covenant Enforcement Policy."

***The HOA Instigates Covenant Enforcement Proceedings Against the Greens***

170.    On June 19, 2017, purportedly pursuant to the Covenant Enforcement Policy, the HOA sent a letter to the Greens stating that they were in violation of the Single-Family Requirement. The letter also stated that the Greens were in violation of Paragraph 19 of the 2002/2010 Covenants because the "business being operated at [the Spruce Road Home] is deemed to constitute and[sic] annoyance or nuisance to the neighborhood." The letter demanded compliance with covenants.

171.    Letters containing the same allegations and demands for compliance as the June 19, 2017 letter were sent by the HOA to the Greens on July 6, 2017 and July 24, 2017.

172.    The HOA did not follow its own Covenant Enforcement Policy prior to sending the letters and did not put content required by the Covenant Enforcement Policy in the letters. The HOA proceeded to a hearing regardless of this fact.

173.    The HOA held a hearing on the "covenant violations" on August 14, 2017 and assessed fines on the Greens.

174.    Counsel for the HOA sent the Greens' counsel a letter on September 14, 2017 stating that the Greens were in violation of the 1995 Covenants and 2017 Amendment by using the

Spruce Road Home for a "non-single family purpose" and by operating a "service facility," alleging that Soaring Home is a commercial business and that "non-single family use by Soaring Hope constitutes a business/commercial use of the Property..." The letter further stated that the HOA had assessed fines against the Greens and that the Greens were responsible for the HOA's attorney's fees associated with enforcing the covenants.

175.    In a November 6, 2017 letter, the Greens, through counsel, demanded that the HOA repeal or revise the discriminatory and unlawful 2017 Amendment to comply with the state and federal fair housing acts, ADA, and any other applicable laws.

176.    In the November 6, 2017 letter, the Greens also made a request for reasonable accommodation for Soaring Hope to conduct therapy on site and to transport residents to and from the home to receive medical services and to go on trips, such as to the YMCA or hiking.

177.    Counsel for the HOA responded to the Greens' November 6, 2017 letter on March 29, 2017. The letter reiterated the HOA's position that Soaring Hope is conducting "commercial activities," that the Greens had committed covenant violations, and that fines will be applied to the Greens.

178.    The March 29, 2017 letter did not address a repeal or revision of the 2017 Amendment or the reasonable accommodation request.

***Damages to Plaintiffs***

179.    Soaring Hope has suffered financial losses because it is unable to financially maintain the cost of a group home with only five (5) people.

180.    Soaring Hope has suffered financial losses because of the expense of maintaining a second location and the cost of transporting residents to that location.

181.    Plaintiffs have also suffered out-of-pocket damages as a result of their need to devote resources to identify and counteract the Defendants' unlawful actions.

182.    As a result of Defendants' actions described above, Plaintiffs have also each suffered, and will continue to suffer, irreparable loss and injury including, but not limited to a deprivation of rights to equal housing opportunities, individual distress and frustration, and a frustration of purpose for Soaring Hope.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*Fair Housing Act - 42 U.S.C. §3604(f)(1); §3604(f)(2)*
*Discrimination/Disparate Treatment*
*All Plaintiffs against Defendant El Paso County*

183.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

184.    Plaintiffs, as providers of residential services and housing to persons with disabilities, have standing to challenge the County's discriminatory conduct as alleged in this Complaint. *See, e.g. Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1348. (S.D. Fla. 2007) ("FHA cases are often brought by a provider of housing on behalf of the residents it seeks to house"); *see also* 42 U.S.C. § 3602(i).

185.    The persons whom Plaintiffs provide housing for have a physical and/or mental impairment that substantially limits one more of their major life activities, have a record of such impairment, or are regarded as having such an impairment.

186.    The County's actions and practices described herein constitute disparate treatment of handicapped and disabled persons, including the residents of the Spruce Road Home, by making housing unavailable to the handicapped or disabled and by discriminating in the provision of services or facilities in connection with such housing, because of the handicapped status of: (a) that person; (b) a person residing in or intending to reside in that

dwelling after it is so sold, rented, or made available; or (c) any person associated with that person in violation of 42 U.S.C. § 3604(f)(1) and § 3604(f)(2).

187. Discrimination under the FHA includes restricting or attempting to restrict the "choices of a person by word or conduct in connecting with seeking, negotiating for, buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing practices, or to discourage or obstruct choices in a community, neighborhood, or development." 24 C.F.R. 100.70(a).

188. The County's disparate treatment of handicapped or disabled persons includes, but is not limited to:

    a. placing an arbitrary occupancy limit of five (5) persons on group homes for protected persons, including those for handicapped or disabled persons, that are not imposed on any other types of residents;

    b. maintaining "Standards Applicable Only to Group Homes" targeted at only group homes for the handicapped or disabled and not other types of group homes;

    c. arbitrarily and capriciously determining that Soaring Hope was "Rehabilitation Facility" and not a "Group Home for Handicapped or Disabled Persons" based on indiscernible definitions of the respective facilities in the LDC in order to deny Soaring Hope's 2016 Special Use Permit Application and despite the fact that it had previously sanctioned the same type of use as group home use protected by the FHA at the Appaloosa Home;

    d. denying Soaring Hope's 2016 Special Use Permit Application (a reasonable accommodation request) despite the fact that this act had the effect of discriminating against handicapped or disabled persons protected by the FHA;

e.  imposing unreasonable and arbitrary conditions such as inspection and parking limitations on Soaring Hope based on the County's arbitrary determination that Soaring Hope was a "Rehabilitation Facility" and not a "Group Home for Handicapped or Disabled Persons" and in violation of the LDC;

f.  demanding that Soaring Hope account for events and provide explanations about activity at the Spruce Road Home;

g.  intentionally amending the LDC to effectively zone out all "Rehabilitation Facilities" in El Paso County which includes persons who are handicapped or disabled and protected by the FHA;

h.  effectively zoning out living for handicapped or disabled persons through enforcement of the overly inclusive and arbitrary definition of "Rehabilitation Facility";

i.  intentionally amending the LDC to segregate living for the handicapped or disabled from the rest of the community.

189.  The foregoing described actions of the County are not connected to any legitimate non-discriminatory interests, such as the protection of the health, safety, and welfare of the community.

190.  The County's actions described herein were actions taken specifically to target Soaring Hope and a similar organization, SMR.

191.  The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

192.    The County's actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles, and risks associated with them and pressure from the community, most notably from the HOA.

193.    As a direct and proximate result of the County's violations of the FHA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

### SECOND CLAIM FOR RELIEF
*Fair Housing Act - 42 U.S.C. §3604(f)(1); §3604(f)(2)*
*Disparate Impact*
*All Plaintiffs against Defendant El Paso County*

194.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

195.    Plaintiffs, as providers of residential services and housing to persons with disabilities, have standing to challenge the County's discriminatory conduct as alleged in this Complaint. *See, e.g. Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1348. (S.D. Fla. 2007) ("FHA cases are often brought by a provider of housing on behalf of the residents it seeks to house"); *see also* 42 U.S.C. § 3602(i).

196.    The persons whom Plaintiffs provide housing for have a physical and/or mental impairment that substantially limits one more of their major life activities, have a record of such impairment, or are regarded as having such an impairment.

197.    The County's actions and practices described herein have had, and will continue to have, a disparate impact on handicapped and disabled persons, including the residents of the Spruce Road Home, by making housing unavailable to the handicapped or disabled and by discriminating in the provision of services or facilities in connection with such housing,

because of the handicapped status of: (a) that person; (b) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (c) any person associated with that person in violation of 42 U.S.C. § 3604(f)(1) and § 3604(f)(2).

198. The County's actions that resulted in a disparate impact on handicapped or disabled persons includes, but is not limited to:

a. placing an arbitrary occupancy limit of five (5) persons on group homes for protected persons, including those for handicapped or disabled persons, that are not imposed on any other types of residents;

b. maintaining "standards applicable only to group homes" targeted at only group homes for the handicapped or disabled and not other types of group homes;

c. denying Soaring Hope's 2016 Special Use Permit Application (a reasonable accommodation request) despite the fact that this act had the effect of discriminating against handicapped or disabled persons protected by the FHA and despite the fact that it had previously sanctioned the same type of use as group home use protected by the FHA at the Appaloosa Home;

d. amending the LDC to effectively zone out all "Rehabilitation Facilities" in El Paso County which includes persons who are handicapped or disabled and protected by the FHA;

e. effectively zoning out living for handicapped or disabled persons through enforcement of the overly inclusive and arbitrary definition of "Rehabilitation Facility"; and

f. amending the LDC to segregate living for the handicapped or disabled from the rest of the community.

199.    This conduct by the County actually or predictably had a substantial adverse impact on handicapped or disabled persons.

200.    As a direct and proximate result of the County's violations of the FHA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

### THIRD CLAIM FOR RELIEF
*Fair Housing Act - 42 U.S.C. §3604(f)(3)(B)*
*Reasonable Accommodation*
*All Plaintiffs against Defendant El Paso County*

201.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

202.    Plaintiffs, as providers of residential services and housing to persons with disabilities, have standing to challenge the County's discriminatory conduct as alleged in this Complaint. *See, e.g. Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1348. (S.D. Fla. 2007) ("FHA cases are often brought by a provider of housing on behalf of the residents it seeks to house"); *see also* 42 U.S.C. § 3602(i).

203.    The persons whom Plaintiffs provide housing for have a physical and/or mental impairment that substantially limits one more of their major life activities, have a record of such impairment, or are regarded as having such an impairment.

204.    The County's acts and practices constitute discrimination under 42 U.S.C. 3604(f)(3)(B), in that the County has, and continues to refuse to make reasonable accommodations in their rules, policies, practices, or services that were and are necessary to afford the handicapped or disabled residents of the Spruce Road Home equal opportunity to use and enjoy housing. 42 U.S.C. § 3604(f)(3)(B).

205.    Pursuant to Section 5.2.2.(D)(3) of the LDC, a Special Use Permit is a request for reasonable accommodation under the FHA.

206.    The County failed to provide reasonable accommodation by:

a.  denying Soaring Hope's 2016 Special Use Permit Application based an arbitrary and capricious determination that Soaring Hope was operating a "Rehabilitation Facility" and not a "Group Home for Handicapped or Disabled Persons" based on indiscernible definitions of the respective facilities in the LDC;

b.  denying Soaring Hope's 2016 Special Use Permit Application despite the fact that it had previously sanctioned the same type of use as group home use protected by the FHA at the Appaloosa Home;

c.  denying Soaring Hope's 2016 Special Use Permit Application despite the residents at the Spruce Road Home being persons protected by the FHA, and regardless of the County's arbitrary and irrelevant distinction between a "Group Home for Handicapped or Disabled Persons" and a "Rehabilitation Facility";

d.  denying Soaring Hope's 2016 Special Use Permit Application in part, based on unsubstantiated falsehoods about the number of persons living at the Spruce Road Home; and

e.  continuing to denying Soaring Hope's 2016 Special Use Permit Application despite evidence that Soaring Hope had complied with the County's demands that Soaring Hope remove "rehabilitation" activities and operate as what the County considered a "Group Home for Handicapped or Disabled Persons."

207.    The accommodations requested by Plaintiffs do not impose any undue financial or administrative burden on the County and do not require a fundamental alteration in the nature of their programs.

208.    The County denied Soaring Hope's 2016 Special Use Permit Application (a request for reasonable accommodation) to increase its occupancy limits and/or to conduct activities which the County considered those of a "Rehabilitation Facility", despite the fact that the requested accommodation is necessary to afford handicapped or disabled residents an equal opportunity to housing and that it was reasonable for the County to provide.

209.    The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

210.    The County's actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles, and risks associated with them.

211.    As a direct and proximate result of the County's violations of the FHA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

**FOURTH CLAIM FOR RELIEF**
*Fair Housing Act - 42 U.S.C. §3617*
*Interference, Coercion, or Intimidation*
*All Plaintiffs against Defendant El Paso County*

212.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

213.    Plaintiffs, as providers of residential services and housing to persons with disabilities, have standing to challenge the County's discriminatory conduct as alleged in this Complaint. *See, e.g. Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1348. (S.D. Fla. 2007) ("FHA cases are often brought by a provider of housing on behalf of the residents it seeks to house"); *see also* 42 U.S.C. § 3602(i).

214.    The persons whom Plaintiffs provide housing for have a physical and/or mental impairment that substantially limits one more of their major life activities, have a record of such impairment, or are regarded as having such an impairment.

215.    The FHA provides that it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA. 42 U.S.C. § 3617.

216.    The County's unlawful acts of coercion, intimidation, threats, and interference with Soaring Hope and its residents' lawful activity protected under the FHA, include, but are not limited to:

    a.    instigating LDC enforcement proceedings against Soaring Hope based on the County's arbitrary and capricious determination that Soaring Hope was operating a "Rehabilitation Facility" and not a "Group Home for Handicapped or Disabled Persons" based on indiscernible definitions of the respective facilities in the LDC;

    b.    instigating LDC enforcement proceedings against Soaring Hope and despite the fact that it had previously sanctioned the same type of use as group home use protected by the FHA at the Appaloosa Home;

c.  instigating LDC enforcement proceedings against Soaring Hope despite the fact that the activities of Soaring Hope are for benefit of the residents at the Spruce Road Home who are protected by the FHA;

d.  continuing with enforcement proceedings despite evidence that Soaring Hope had complied with the County's demands that it cease "rehabilitation" activities and operate as a "Group Home for Handicapped or Disabled Persons";

e.  forcing Soaring Hope into the Stipulation by telling Soaring Hope that it had to agree to the Stipulation or that it would have to shut down the Spruce Road Home;

f.  imposing unreasonable and arbitrary conditions such as inspection and parking limitations on Soaring Hope based on the County's arbitrary determination that Soaring Hope was a "Rehabilitation Facility" and not a "Group Home for Handicapped or Disabled Persons" and in violation of the LDC;

g.  demanding that Soaring Hope account for events and provide explanations about activity at the Spruce Road Home; and

h.  retaliating against Soaring Hope by instigating LDC enforcement proceedings and imposing the Stipulation because Soaring Hope requested an increase in occupancy from five (5) to ten (10) persons by declaring it a "Rehabilitation Facility" despite the fact that the County was aware that it was already conducting such claimed "Rehabilitation Facility" uses and previously sanctioning such uses at the Appaloosa Home as those protected under the FHA.

217.  The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented

with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

218.    The County's actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles and risks associated with them.

219.    As a direct and proximate result of the County's violations of the FHA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

**FIFTH CLAIM FOR RELIEF**
*Title II of the Americans with Disabilities Act – 42 U.S.C. § 12132, et seq.*
*Discrimination/Disparate Treatment*
*All Plaintiffs against Defendant El Paso County*

220.    Plaintiffs incorporate by reference all of the preceding paragraphs as if fully set forth herein.

221.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

222.    Plaintiffs, as individuals and entities who have a relationship and/or association with individuals who have known disabilities, have standing to bring claims under Title II of the ADA. *See* 28 C.F.R. 35.130(g).

223.    The residents of the Spruce Road Home have been qualified to participate in the services, programs, and/or activities that are provided by the County.

224.   The residents of the Spruce Road Home meet the essential eligibility requirements for receipt of services or the participation in programs or activities provided by the County, with or without a reasonable accommodation.

225.   The County is a public entity as defined by Title II of the ADA.

226.   Title II of the ADA encompasses zoning decisions, such as those made pursuant to the LDC.  *See, e.g. Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 44-45 (2d Cir. 1997).

227.   The County's decision to amend and enforce the LDC's occupancy limits on group homes for individuals with handicaps or disabilities, which are not imposed on any other type of resident, intentionally discriminate against individuals on the basis of their handicap or disability in violation of Title II.

228.   Moreover, the County's decision to amend and enforce the occupancy limits contained in the LDC to further restrict the operation of group homes for the handicapped or disabled in El Paso County to segregate such homes from the rest of the community, as further described above, intentionally discriminates against individuals on the basis of their disability in violation of Title II.

229.   The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

230.   As a direct and proximate result of the County's violations of Title II of the ADA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

**SIXTH CLAIM FOR RELIEF**
*Title II of the Americans with Disabilities Act – 42 U.S.C. § 12132, et seq.*
*Disparate Impact*
*All Plaintiffs against Defendant El Paso County*

231.    Plaintiffs incorporate by reference all of the preceding paragraphs as if fully set forth herein.

232.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

233.    Plaintiffs, as individuals and/or entities who have a relationship or association with individuals who have known disabilities, have standing to bring claims under Title II of the ADA. *See* 28 C.F.R. 35.130(g).

234.    Plaintiffs and the residents of the Spruce Road Home have been qualified to participate in the services, programs, and/or activities that are provided by the County.

235.    The County is a public entity as defined by Title II of the ADA.

236.    Title II of the ADA encompasses zoning decisions, such as those made pursuant to the LDC.  *See, e.g. Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 44-45 (2d Cir. 1997).

237.    The County's decision to amend and enforce the occupancy limits contained in the LDC and to further restrict the operation of group homes for the handicapped or disabled in El Paso County to segregate such homes from the rest of the community constitute zoning decision and/or practices.

238.   Under the ADA's disparate impact theory, a plaintiff can establish a violation of the law by demonstrating that defendant's outwardly neutral policies and/or practices have a greater adverse impact on persons with disabilities than on non-protected persons.

239.   The County's policy and/or practice of enforcing occupancy limits on group homes for individuals with disabilities that are not imposed on any other type of resident have had and will continue to have, a substantial adverse, disparate impact on individuals with disabilities in violation the FHA.

240.   The County's policy and/or practice of restricting the operation of group homes for the handicapped or disabled in El Paso County and to segregate such homes from the rest of the community have had, and will continue to have, a substantial adverse, disparate impact on individuals with disabilities in violation the FHA.

241.   As a direct and proximate result of the County's violations of Title II of the ADA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

## SEVENTH CLAIM FOR RELIEF
*Title II of the Americans with Disabilities Act – 42 U.S.C. § 12132, et seq.*
*Reasonable Accommodation*
*All Plaintiffs against Defendant El Paso County*

242.   Plaintiffs incorporate by reference all of the preceding paragraphs as if fully set forth herein.

243.   Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

244.   Plaintiffs, as individuals and entities who have a relationship and/or association with individuals who have known disabilities, have standing to bring claims under Title II of the ADA. *See* 28 C.F.R. 35.130(g).

245.   The residents of the Spruce Road Home have been qualified to participate in the services, programs, and/or activities that are provided by the County.

246.   The residents of the Spruce Road Home meet the essential eligibility requirements for receipt of services or the participation in programs or activities provided by the County, with or without a reasonable accommodation.

247.   The County is a public entity as defined by Title II of the ADA.

248.   The County's decision to deny Soaring Hope's 2016 Special Use Permit Application (a reasonable accommodation request) to increase its occupancy limits and/or operate as a Rehabilitation Facility, despite the fact that the requested accommodation is necessary to afford handicapped or disabled residents an equal opportunity to housing, and that it was reasonable for the County to provide, constitutes discrimination in violation of Title II.

249.   The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

250.   As a direct and proximate result of the County's violations of Title II of the ADA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

### EIGHTH CLAIM FOR RELIEF
*Section 504 of the Rehabilitation Act of 1973 – 29 U.S.C. § 701*
*Discrimination/Disparate Treatment*
*All Plaintiffs against Defendant El Paso County*

251. Plaintiffs incorporate by reference all of the preceding paragraphs as if fully set forth herein.

252. Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance …" 29 U.S.C. § 794.

253. Plaintiffs, as individuals and/or entities who have a relationship or association with individuals who have known disabilities, have standing to bring claims under Section 504. *See* 28 C.F.R. 35.130(g).

254. Plaintiffs and the residents of the Spruce Road Home have been qualified to participate in the services, programs, and/or activities that are provided by the County.

255. Plaintiffs and the residents of the Spruce Road Home meet the essential eligibility requirements for receipt of services or the participation in programs or activities provided by the County, with or without a reasonable accommodation.

256. Upon information and belief, the County is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504 and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

257. Section 504 encompasses zoning decisions, such as those made pursuant to the El Paso County LDC. *See, e.g. Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 44-45 (2d Cir. 1997).

258. The County's decisions to amend and enforce the occupancy limits contained in the LDC and to further restrict the operation of group homes for the handicapped or disabled in El

Paso County to segregate such homes from the rest of the community constitute zoning decision and/or practices.

259. The County's decision to amend and enforce the LDC's occupancy limits on group homes for individuals with disabilities, which are that are not imposed on any other type of resident, intentionally discriminate against individuals on the basis of their disability in violation of Section 504.

260. Moreover, the County's decision to amend and enforce the occupancy limits contained in the LDC and to amend the LDC to further restrict the operation of group homes for the handicapped or disabled in El Paso County to segregate such homes from the rest of the community intentionally discriminates against individuals on the basis of their disability in violation of Section 504.

261. Finally, the County's decision to deny Soaring Hope's 2016 Special Use Permit Application (a reasonable accommodation request) to increase its occupancy limits and/or operate as a Rehabilitation Facility, despite the fact that the requested accommodation is necessary to afford handicapped or disabled residents an equal opportunity to housing, and that it was reasonable for the County to provide, constitutes discrimination in violation of Section 504.

262. The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

263. As a direct and proximate result of the County's violations of the RA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

**NINTH CLAIM FOR RELIEF**
*Section 504 of the Rehabilitation Act of 1973 – 29 U.S.C. § 701*
*Disparate Impact*
*All Plaintiffs against Defendant El Paso County*

264.    Plaintiffs incorporate by reference all of the preceding paragraphs as if fully set forth

herein.

265.    Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise

qualified individual with a disability … shall, solely by reason of his or her disability, be

excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving federal financial assistance …" 29

U.S.C. § 794.

266.    Plaintiffs, as individuals and/or entities who have a relationship or association with

individuals who have known disabilities, have standing to bring claims under Section 504 of

the Rehabilitation Act of 1973. *See* 28 C.F.R. 35.130(g).

267.    Plaintiffs and the residents of the Spruce Road Home have been qualified to participate in

the services, programs, and/or activities that are provided by the County.

268.    Upon information and belief, the County is a direct recipient of federal financial

assistance sufficient to invoke the coverage of Section 504 and has received such federal

financial assistance at all times relevant to the claims asserted in this Complaint.

269.    Section 504 of the Rehabilitation Act of 1973 encompasses zoning decisions, such as

those made pursuant to the LDC.  *See, e.g. Innovative Health Systems, Inc. v. City of White

Plains*, 117 F.3d 37, 44-45 (2d Cir. 1997).

270.    The County's decision to amend and enforce the occupancy limits contained in the LDC

and to further restrict the operation of group homes for the handicapped or disabled to

segregate such homes from the rest of the community constitute zoning decision and/or practices.

271.    Under Section 504's disparate impact theory, a plaintiff can establish a violation of the law by demonstrating that defendant's outwardly neutral policies and/or practices have a greater adverse impact on persons with disabilities than on non-protected persons.

272.    The County's policy and/or practice of enforcing occupancy limits on group homes for individuals with disabilities that are not imposed on any other type of resident, have had, and continue to have, a substantial adverse, disparate impact on individuals with disabilities in violation the FHA.

273.    As a direct and proximate result of the County's violations of the RA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

## TENTH CLAIM FOR RELIEF
*Section 504 of the Rehabilitation Act of 1973 – 29 U.S.C. § 701*
*Reasonable Accommodation*
*All Plaintiffs against Defendant El Paso County*

274.    Plaintiffs incorporate by reference all of the preceding paragraphs as if fully set forth herein.

275.    Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability … shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance …" 29 U.S.C. § 794.

276.    Plaintiffs, as individuals and/or entities who have a relationship or association with individuals who have known disabilities, have standing to bring claims under Section 504. *See* 28 C.F.R. 35.130(g).

277.    Plaintiffs and the residents of the Spruce Road Home have been qualified to participate in the services, programs, and/or activities that are provided by the County.

278.    Plaintiffs and the residents of the Spruce Road Home meet the essential eligibility requirements for receipt of services or the participation in programs or activities provided by the County, with or without a reasonable accommodation.

279.    Upon information and belief, the County is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504 and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

280.    The County's decision to deny Soaring Hope's 2016 Special Use Permit Application (a reasonable accommodation request) to increase its occupancy limits and/or operate as a Rehabilitation Facility, despite the fact that the requested accommodation is necessary to afford handicapped or disabled residents an equal opportunity to housing, and that it was reasonable for the County to provide, constitutes discrimination in violation of Section 504.

281.    The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

282.    As a direct and proximate result of the County's violations of the RA, Plaintiffs have suffered and will continue to suffer from substantial economic and non-economic damages as detailed above.

## ELEVENTH CLAIM FOR RELIEF

*42 U.S.C. § 1983 – Equal Protection Clause Violation*
*All Plaintiffs against Defendant El Paso County*

283.   Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

284.   The County has violated the Spruce Road Home residents' constitutional rights to equal protection of the laws under the Fourteenth Amendment to the United States Constitution by denying handicapped or disabled persons equal access to housing.

285.   The County's actions in denying the residents of the Spruce Road Home equal protection include, but are not limited to intentionally:

a.   enacting and enforcing occupancy limits on group homes for individuals with handicaps or disabilities that are not imposed on any other type of residents;

b.   denying Soaring Hope's 2016 Special Use Permit Application (a reasonable accommodation request); and

c.   amending the LDC to further restrict the operation of group homes and housing for the handicapped or disabled in El Paso County and to segregate group homes and housing for the handicapped or disabled from the rest of the community.

286.   The County's actions described herein discriminate against the residents of the Spruce Road Home solely on the basis of their handicaps or disabilities.

287.   The foregoing described actions of the County are not connected to any legitimate non-discriminatory interests, such as the protection of the health, safety, and welfare of the community.

288.    The County's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

289.    The County's actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles, and risks associated with them and pressure from the community, most notably from the HOA.

290.    As a direct and proximate result of the County's actions, Plaintiffs and their residents have suffered and will continue to suffer from economic and non-economic damages as detailed above.

### TWELFTH CLAIM FOR RELIEF
*Constitutional Challenge to the LDC*

291.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

292.    The LDC defines a "Rehabilitation Facility" as "[a]n institutional use-type facility, and not a group home, whether public, quasi-public, not-for-profit, providing accommodation, treatment and medical care for patients suffering from alcohol or drug related illness."

293.    The terms and phrases used in the LDC definition of "Rehabilitation Facility" are not further defined.

294.    The LDC definition of "Rehabilitation Facility" does not distinguish between addicted and non-addicted persons who are protected by the FHA and ADA in defining what kind of residential living and activities fall under "Rehabilitation Facility" use and what kind of

residential living and activities fall under "Group Homes for Handicapped or Disabled Persons" use.

295.   The LDC effectively zones out "Rehabilitation Facilities" in El Paso County.

296.   The County's definition of a "Rehabilitation Facility," along with the LDC's effective elimination of "Rehabilitation Facilities," is unconstitutional on its face and as-applied for vagueness and overbreadth and violates Plaintiffs' rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

297.   Due process requires that a governmental entity provide meaningful standards to guide the application of its laws. A law that lacks such standards is void for vagueness.

298.   A vague law impermissibly delegates basic policy matters to government officials, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

299.   The County's definition of a "Rehabilitation Facility" is unconstitutionally vague because persons of common intelligence must necessarily guess at the meaning and must differ as to the application.

300.   Accordingly, this definition provides impermissible and unbridled discretion to County officials to determine what kind of residential living and activities are consistent with a "Group Home for Handicapped or Disabled Persons" and what residential living and activities are consistent with a "Rehabilitation Facility."

301.   A law is overbroad if it prohibits not only acts the legislature may forbid, but also constitutionally protected conduct.

302.   The definition of "Rehabilitation Facility" is unconstitutionally overbroad on its face and as-applied because along with the LDC effectively zoning out "Rehabilitation Facilities," it

has the effect of prohibiting residential living and activities protected by the FHA, ADA, and RA.

303.   This definition is unconstitutionally overbroad because it delegates overly broad discretion to officials and allows them to discriminate against persons protected by the FHA, ADA, and RA based on arbitrary and capricious determinations as to what residential living and activities constitute a "Rehabilitation Facility" and what residential living and activities constitute a "Group Home for Handicapped or Disabled Persons."

304.   The County made such arbitrary and capricious determinations when it denied Soaring Hope's 2016 Special Use Permit Application based on its determination that the Spruce Road Home operations were a "Rehabilitation Facility," despite the fact that the County had previously sanctioned the same activities at the Appaloosa Home as protected uses under federal law.

305.   Because the County has effectively zoned out "Rehabilitation Facilities," the County can act to remove group homes and persons protected by the FHA, ADA, and RA by arbitrarily and capriciously determining that the group home is a "Rehabilitation Facility" and not a "Group Home for Handicapped or Disabled Persons" as defined by the LDC, as it has done with Soaring Hope.

306.   This definition, along with the LDC effectively zoning out "Rehabilitation Facilities", was designed, calculated, and implemented to unlawfully eliminate Soaring Hope's ability to conduct the lawful operation of a group home.

307.   This vague and overly broad definition of a "Rehabilitation Facility" and the LDC's effective elimination of "Rehabilitation Facilities" from El Paso County are not rationally related to a legitimate government interest.

308.    This vague and overly broad definition of a "Rehabilitation Facility" creates an impermissible classification which is arbitrary, irrational, and violative of due process and equal protection under the Fourteenth Amendment to the United States Constitution.

309.    Plaintiffs are therefore entitled to a determination that the definition of "Rehabilitation Facility" is invalid, unlawful, and unenforceable.

<u>**THIRTEENTH CLAIM FOR RELIEF**</u>
*Fair Housing Act - 42 U.S.C. §3604(f)(1); §3604(f)(2)*
*Discrimination/Disparate Treatment*
*All Plaintiffs Against Defendant Red Rock Ranch, Forest View Acres, and Clovenhoof*
*Homeowners Association*

310.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

311.    Plaintiffs, as providers of residential services and housing to persons with disabilities, have standing to challenge the HOA's conduct as alleged in this Complaint. *See, e.g. Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1348. (S.D. Fla. 2007) ("FHA cases are often brought by a provider of housing on behalf of the residents it seeks to house"); *see also* 42 U.S.C. § 3602(i).

312.    The persons whom Plaintiffs provide housing for have a physical and/or mental impairment that substantially limits one more of their major life activities, have a record of such impairment, or are regarded as having such an impairment.

313.    Homeowners' associations like the HOA are subject to the FHA.

314.    The HOA's actions and practices described herein constitute disparate treatment of handicapped and disabled persons, including the residents of the Spruce Road Home, by making housing unavailable to the handicapped or disabled and by discriminating in the provision of services or facilities in connection with such housing, because of the

handicapped status of: (a) that person; (b) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (c) any person associated with that person in violation of 42 U.S.C. § 3604(f)(1) and § 3604(f)(2).

315.   Discrimination under the FHA includes restricting or attempting to restrict the "choices of a person by word or conduct in connecting with seeking, negotiating for, buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing practices, or to discourage or obstruct choices in a community, neighborhood, or development." 24 C.F.R. 100.70(a).

316.   The HOA's disparate treatment of handicapped or disabled persons includes, but is not limited to:

    a.   passing the 2017 Amendment to the covenants to impose an unlawful and discriminatory Single-Family Requirement to prohibit group homes;

    b.   using a covenant provision prohibiting business/commercial use to erroneously claim that Soaring Hope and the Greens were violating the covenants;

    c.   enforcing the covenant provision prohibiting business/commercial use only against Soaring Hope and the Greens with letters accusing them of violating the covenants; and

    d.   instigating covenant enforcement proceedings against the Greens and assessing fines against the Greens for violation of the covenants, including the unlawful and discriminatory Single-Family Requirement.

317.   The HOA's actions described herein were actions taken specifically to target Soaring Hope and its residents to force them out of the neighborhood.

318.    The HOA's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

319.    The HOA's actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles, and risks associated with them.

320.    As a direct and proximate result of HOA's violations of the FHA, Plaintiffs have suffered, and continue to suffer from substantial economic and non-economic damages as detailed above.

**FOURTEENTH CLAIM FOR RELIEF**
*Fair Housing Act - 42 U.S.C. §3604(f)(3)(B)*
*Reasonable Accommodation*
*All Plaintiffs Against Defendant Red Rock Ranch, Forest View Acres, and Clovenhoof*
*Homeowners Association*

321.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

322.    Plaintiffs, as providers of residential services and housing to persons with disabilities, have standing to challenge the HOA's conduct as alleged in this Complaint. *See, e.g. Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1348. (S.D. Fla. 2007) ("FHA cases are often brought by a provider of housing on behalf of the residents it seeks to house"); *see also* 42 U.S.C. § 3602(i).

323.    The persons whom Plaintiffs provide housing for have a physical and/or mental impairment that substantially limits one more of their major life activities, have a record of such impairment, or are regarded as having such an impairment.

324.   Homeowners' associations like the HOA are subject to the FHA.

325.   A reasonable accommodation request was made to the HOA.

326.   The HOA denied the reasonable accommodation request by ignoring it and instead stating that it would be assessing fines on the Greens for violating the covenants.

327.   The HOA's acts and practices constitute discrimination under 42 U.S.C. 3604(f)(3)(B) because the HOA has, and continues to refuse to make reasonable accommodations in their rules, policies, practices, or services that were and are necessary to afford the handicapped or disabled residents of the Spruce Road Home equal opportunity to use and enjoy the home.

328.   Discrimination under the FHA includes restricting or attempting to restrict the "choices of a person by word or conduct in connecting with seeking, negotiating for, buying or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing practices, or to discourage or obstruct choices in a community, neighborhood, or development." 24 C.F.R. 100.70(a).

329.   The HOA's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

330.   The HOA's actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles, and risks associated with them.

331.   As a direct and proximate result of HOA's violations of the FHA, Plaintiffs have suffered, and continue to suffer from substantial economic and non-economic damages as detailed above.

## FIFTEENTH CLAIM FOR RELIEF
*Fair Housing Act - 42 U.S.C. §3617*
*Interference, Coercion, or Intimidation*
*All Plaintiffs Against Defendant Red Rock Ranch, Forest View Acres, and Clovenhoof*
*Homeowners Association*

332.    Plaintiffs reallege and incorporate by reference all proceeding paragraphs as if fully set forth herein.

333.    Plaintiffs, as providers of residential services and housing to persons with disabilities, have standing to challenge the HOA's conduct as alleged in this Complaint. *See, e.g. Jeffrey O. v. City of Boca Raton*, 511 F.Supp.2d 1339, 1348. (S.D. Fla. 2007) ("FHA cases are often brought by a provider of housing on behalf of the residents it seeks to house"); *see also* 42 U.S.C. § 3602(i).

334.    The persons whom Plaintiffs provide housing for have a physical and/or mental impairment that substantially limits one more of their major life activities, have a record of such impairment, or are regarded as having such an impairment.

335.    The FHA provides that it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA. 42 U.S.C. §3617.

336.    The Plaintiffs engaged in activities protected by the FHA or aided/encouraged others in the exercise or enjoyment of rights protected under the FHA.

337.    The HOA coerced, intimidated, threatened, and interfered with activities of the Plaintiffs to induce Soaring Hope and its residents to leave the Spruce Road Home by:

a. perpetrating misinformation and falsehoods about Soaring Hope to the County and the community and encouraging others to oppose Soaring Hope's 2016 Special Use Permit Application and pass the 2017 Amendment based on the same;

b. amending the HOA covenants to add an unlawful Single-Family Requirement covenant provision enacted for the purpose of forcing Soaring Hope and its residents out of the neighborhood;

c. using a covenant provision prohibiting business/commercial use to erroneously claim that the Plaintiffs were violating the covenants;

d. repeatedly harassing the Greens with letters accusing them of violating the covenants; and

e. instigating covenant enforcement proceedings and assessing fines against the Greens for violation of the covenants, including the unlawful and discriminatory Single-Family Requirement.

338.   The HOA retaliated against the Plaintiffs for engaging in activities protected by the FHA by subjecting the Plaintiffs to an adverse action by amending the HOA covenants to include an unlawful and discriminatory Single-Family Requirement covenant provision; enacting a "Covenant Enforcement Policy" specifically to enforce this Single-Family Requirement and to target the Plaintiffs; and subjecting the Greens to covenant enforcement proceedings and imposing fines on them in an effort to drive Soaring Hope and its residents out of the Spruce Road Home.

339.   The HOA's actions described herein were actions taken specifically to target Soaring Hope and its resident to force them out of the neighborhood.

340.   The HOA's unlawful actions and practices described above were, and are, acts and/or omissions undertaken intentionally, maliciously, willfully, or wantonly, and/or implemented with a callous and reckless disregard of the rights of the handicapped or disabled residents of the Spruce Road Home.

341.   The HOA's actions were motivated by stereotypes, unfounded fears, misperceptions, and archaic attitudes, as well as simple prejudice about people with disabilities, their lifestyles, and risks associated with them.

342.   As a direct and proximate result of HOA's violations of the FHA, Plaintiffs have suffered, and continue to suffer from substantial economic and non-economic damages as detailed above.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and against Defendants as follows:

A.   That this Court declare the actions of the Defendants complained of herein to be in violation of the Fair Housing Act, Title II of the Americans With Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the regulations promulgated under those Acts; the 14th Amendment; and that sections of the LDC are void as unconstitutionally vague and overly broad;

B.   Award such compensatory damages as this Court may deem just and proper for the Defendants' violations of Plaintiffs' federally protected and constitutional rights;

C.   Enter an order declaring that the definition of a "Rehabilitation Facility" challenged herein is unconstitutional;

D.   Award Plaintiffs reasonable attorneys' fees and costs, as provided by law;

E.   Award Plaintiffs punitive damages as provided by law;

F.      Award pre-judgment and post-judgment interest on any award of damages to the extent permitted by law;

G.      That this Court issue a permanent injunction requiring the County to undertake measures to remediate its past and ongoing violations of the Fair Housing Act, Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes;

H.      That this Court issue a declaration that the HOA, as alleged here, has violated, and continues to violate, the Fair Housing Act, Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes;

I.      That this Court issue a permanent injunction requiring the HOA to undertake measures to remediate its past and ongoing violations of the Fair Housing Act, Title II of the ADA, Section 504 of the Rehabilitation Act, and the regulations promulgated under those statutes.

J.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby make a demand for a jury trial on all issues so triable.

Dated this 12th day of October, 2018.

                                LAW OFFICE OF RACHEL B. MAXAM, PLLC


                                *s/ Rachel B. Maxam*
                                _____
                                Rachel B. Maxam, #47711
                                Law Office of Rachel B. Maxam, PLLC
                                1512 Larimer St., Ste. 600
                                Denver, CO 80202
                                Tel: 720-526-2928
                                Email: rachel@maxamlawfirm.com

LAW OFFICE OF JULIAN G.G. WOLFSON, LLC

*s/ Julian G.G. Wolfson*

Law Office of Julian G.G. Wolfson, LLC
Julian G.G. Wolfson #50603
1630 Welton Street #727
Denver, CO 80202
Tel: 720-507-5133
Email: jwolfsonlaw@gmail.com

*Attorneys for Plaintiffs*