**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-1122-WJM-KMT

JOHN GREEN,
JOAN GREEN, and
COURAGE TO CHANGE RANCHES HOLDING COMPANY, a Colorado non-profit
corporation d/b/a Soaring Hope Recovery Center,

      Plaintiffs,

v.

EL PASO COUNTY, COLORADO,

      Defendant.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

Plaintiffs Courage to Change Ranches Holding Company ("Soaring Hope"), Joan Green, and John Green (collectively, "Plaintiffs") bring this action against Defendant El Paso County, Colorado ("County" or "Defendant") pursuant to Sections 3604 and 3617 of the Fair Housing Act, Title II of the Americans with Disability Act, Section 504 of the Rehabilitation Act of 1973, and the U.S. Constitution.

This matter is before the Court on the Defendant's Motion for Summary Judgment ("County's Motion"), which was filed on December 6, 2019. (ECF No. 104.) Also before the Court is Plaintiffs' Partial Motion for Summary Judgment Against El Paso County ("Plaintiffs' Motion"), which was also filed on December 6, 2019. (ECF No. 105.)

For the reasons explained below, Plaintiffs' Motion is denied, and the County's Motion is granted in part, and denied in part.

## I.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

**A.**    **Factual Allegations**[1]

1.    The County's Land Development Code

---

[1]  The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

The County regulates and enforces land use through its Land Development Code ("LDC").  (ECF No. 105 at 5, ¶ 24.)  The LDC includes a variety of zoning districts, including "Commercial Zoning," "Obsolete Zoning," and "Residential Zoning."  (ECF No. 104 at 7–8, ¶¶ 29–31; ECF No. 104-18 at 3.)

The LDC provides that certain facilities located within specific zoning districts are allowed to operate as of right (*i.e.*, as an "Allowed Use").  (ECF No. 105 at 5, ¶ 25.)  An "Allowed Use" includes "any use permissible in a zoning district provided all provisions and standards of this Code have been satisfied."  (ECF No. 104 at 6, ¶ 20.)

Other types of facilities are only permitted within specific zoning districts as a "Special Use."  (ECF No. 105 at 5, ¶ 25.)  A "Special Use" is defined as a "use that, owing to some special characteristics attendant to its operation or installation (e.g., potential danger, traffic, smoke or noise impact) is allowed in a zoning district, subject to approval and special requirements, different from those usual requirements for the zoning district in which the special use may be located."  (ECF No. 104 at 6, ¶ 23.)  In order to engage in a Special Use, the user must submit—and the County must approve—a user's application for a "Special Use Permit."  (ECF No. 105 at 5, ¶ 25.)

2.    The Appaloosa Property

Soaring Hope operates a "series of substance abuse rehabilitation clinics," which aim to "assist addicts to successfully create a clean and sober productive lifestyle." (ECF No. 104 at 2–3, ¶1; 104-1 at 4.)  Soaring Hope was founded by Dr. Judith Miller, Ph.D.  ("Dr. Miller").  (ECF No. 104 at 3, ¶ 3; 104-2 at 1.)

In 2011, Soaring Hope began operating a facility at 5485 Appaloosa Drive, Colorado Springs, Colorado ("Appaloosa Property"), in El Paso County.  (ECF No. 104

3

at 3, ¶ 4.)  At the time, the County's zoning regulations permitted rehabilitation facilities to operate within its zoning area with a Special Use permit.  (*Id.* at 3, ¶ 7.)

In 2012, Soaring Hope submitted an application for a Special Use permit to operate as an "Addiction Recovery Rehabilitation Facility," as defined by the LDC. (ECF No. 105 at 5, ¶ 28; ECF No. 106-4 at 2.)  The County denied Soaring Hope's application on November 8, 2012.  (ECF No. 104 at 4, ¶ 8.)

Following the denial of its application for a Special Use permit, Soaring Hope filed a complaint with the Department of Housing and Urban Development in early 2013, alleging that the County discriminated against the facility through its application of its zoning and land use laws.  (*Id.* at 4, ¶ 9; ECF No. 104-5 at 1.)  This matter was subsequently referred to the Department of Justice ("DOJ") for investigation, which opened an investigation into the County's "zoning and land use practices."  (ECF No. 104-5 at 1.)

In response, the County informed DOJ that it would be amending the LDC "to provide that drug and alcohol rehabilitation group homes shall be classified as 'adult care homes,' and shall be permitted as uses by right in the zone districts in the County in which single-family homes are permitted as uses by right."  (ECF No. 105 at 7, ¶ 35; ECF No. 104-6 at 2.)  With regard to the Appaloosa Property, the County "agree[d] that a special permit is not required for this operation, so long as it continues to qualify as a group home for disabled or handicapped persons."  (ECF No. 104-6 at 1.)  DOJ closed its investigation into the Appaloosa Property in February 2017.  (ECF No. 104 at 4, ¶ 12; ECF No. 104-8 at 1.)

3.    The 2014 Amendments to the LDC

In July 2014, the County amended its LDC ("2014 Amendments").  (ECF No. 105 at 5, ¶ 17; ECF No. 106-8.)  The amended LDC defines "Rehabilitation Facilities" and "Group Home for Handicapped or Disabled Persons" as follows:

• **Rehabilitation Facility** – An institutional use-type facility, and not a group home, whether public, quasi-public, not-for-profit, providing accommodation, treatment and medical care for patients suffering from alcohol or drug-related illness

• **Group Home for Handicapped Disabled Persons** – A group home for persons with mental or physical impairments which substantially limit one or more major life activities and including such additional necessary persons required for the care and supervision of the permitted number of handicapped or disabled persons. "Handicap" and "disability" have the same legal meaning.  A person with a disability is any person who has a physical or mental impairment that substantially limits one or more major life activities; has a record of such impairment; or is regarded as having such an impairment.  A physical or mental impairment includes, but is not limited to, . . . alcoholism, drug addiction, . . . Group homes for handicapped or disabled persons, particularly as they relate to recovering (not currently using) alcoholics and persons with drug addictions, may also be known as sober living arrangements.

(ECF No. 106-8 at 5.)

Prior to 2014, Group Homes for Handicapped or Disabled Persons ("Group Homes") required a Special Use permit, regardless of how many handicapped or disabled residents occupied the home.  (ECF No. 104 at 8, ¶ 32; ECF No. 104-19 at 1.) Pursuant to the 2014 Amendments, Group Homes with five or fewer occupants are allowed in single family residential zoning districts as an Allowed Use.  (ECF No. 104 at 8, ¶ 33.)   Group Homes with six to ten occupants require a Special Use Permit.  (ECF No. 104 at 8, ¶ 34.)

5

Rehabilitation Facilities required a Special Use permit in nine of thirteen residential zoning districts prior to 2014.  (*Id.* at 9, ¶ 35.)  Following the 2014 Amendments, a Rehabilitation Facility (with any occupancy level) is an Allowed Use in all three County Commercial Zoning Districts and three of four Obsolete Zoning Districts; a rehabilitation facility (with any occupancy level) can also be operated in two residential, multifamily zoning districts (RM-12 and RM-30) with a Special Use Permit. (*Id.* at 9, ¶¶ 36–38)  Regardless of the occupancy level or permitting process, however, rehabilitation facilities are not allowed in the County's single family zoning districts.

4.   The Spruce Road Property

Beginning in September 2014, John and Joan Green rented their single-family home located at 18375 Spruce Road, Monument, Colorado in El Paso County ("Spruce Road Property") to Soaring Hope.  (ECF No. 105 at 9, ¶ 44.)  The Spruce Road Property is located in a County Residential Zoning District (RR - 0.5).  (ECF No. 104 at 9, ¶ 41.)  As such, under the current zoning ordinances, Soaring Hope is permitted to operate a Group Home on this property as either an Allowed Use or Special Use depending on the occupancy, but it is not permitted to operate a rehabilitation facility on the property.  (*Id.* at 9–10, ¶¶ 42–43.)

On February 19, 2015, Dr. Miller sent a letter to the County requesting verification from the County that the Spruce Road Property was in compliance with the County's zoning regulations.  (ECF No. 105 at 9, ¶ 46; ECF No. 106-13.)  On February 26, 2015, the County sent a confirmation letter to the Colorado Office of Behavioral Health recognizing that "El Paso County zoning regulations classify the home as operated in this location as a 'Group Home for Handicapped or Disabled Persons['].  . . .

6

Based upon the representations of Judith Miller in the attached letter[2] our opinion is that the facility is in compliance with zoning."  (ECF No. 106-15; ECF No. 105 at 10, ¶ 47.)

At a March 3, 2015 "Early Assistance Meeting," Soaring Hope discussed wanting to have a "group home for up to 10 clients and up to 15 staff members."  (ECF No. 106-13 at 1, ECF No. 10, ¶ 48.)  According to the Meeting Minutes, Dr. Miller stated that facility "is used for, and will continue to be used for, urine testing to screen for substance abuse, neurotransmitter tests to make objective diagnosis of the client, titrating and administering neuroceuticals to clients, administering EEG for neurofeedback, talk therapy, and individual and group counseling."  (ECF No. 106-13 at 1.)  The Meeting Minutes further note that "the applicant will have to prove that the proposed special use is for a group home for 10 persons that would fall under the definition of a Group Home for Handicapped or Disabled Persons and that it is not a Rehabilitation Facility.  A Rehabilitation Facility is not allowed in the RR-0.5 zone district."  (*Id.* at 2.)

     5.    2016 Spruce Road Property Application for Special Use Permit

On or about April 27, 2016, Dr. Miller submitted an application for a Special Use Permit to increase the occupancy at the Spruce Road Property from five to ten residents.  (ECF No. 104 at 12, ¶ 54.)  As justification for the occupancy increase, Dr. Miller stated in the application that it was not economically feasible to operate with only

---

2 Because Plaintiffs did not provide the Court with a copy of the letter referenced in the County's February 26, 2015 letter, the Court cannot make factual findings regarding the representations that Dr. Miller made to the County.  (ECF No. 106-15.)

five clients.  (ECF No. 104-26 at 8.)  The application includes a "Description of the

Program,[3]  which states that "[e]ach individual recovery plan integrates time-tested

socio-psychological therapies, and cutting-edge neuroscience," including NeuroTherapy

(LENS), Balancing Neurotransmitters, Cognitive Behavioral Therapy,

Spiritual/Experiment Therapy, Family/Relationship Repair, and Career Rehabilitation.

(ECF No. 104-26 at 9.)

On July 12, 2016, County Executive Director Craig Dossey sent a letter to

Soaring Hope and the Greens.  (ECF No. 105 at 11, ¶ 53; ECF No. 106-18 at 1.)  He

writes, "I have concluded that the Spruce Road operation is a rehabilitation f acility,

rather than a group home.  Rehabilitation facilities are not permitted, as of right or by

special review, in the RR-0.5 zoning district, and for this reason, your application will not

be further processed and will be returned to you."  (ECF No. 106-18 at 4.)  In making

this determination, Mr. Dossey cited a number of factors weighing in favor of

categorizing the Spruce Road Property as a rehabilitation facility, including:

- Medically assisted drug and alcohol dependence rehabilitation is clearly the primary purpose of patients' stay at the Spruce Road facility, not an incidental aspect of a residential use.

- Your statement in correspondence dated March 21, 2016, that the Spruce Road facility is an addiction recovery program, not a sober living or traditional group home.  You also state in your application that "[t]he home is currently in use for therapeutic services for addiction."

---

[3] Plaintiffs inexplicably omit this portion of the application in the copy of the document that they submit to the Court.  (*See* ECF No. 106-17.) The Court therefore quotes the version attached to Defendants' Motion for Summary Judgment.

- Your materials and the application consistently describe the person in residence at the Spruce Road facility as either "patients" or "clients," and that they receive treatment."

- As described in the application, 10 to 15 staff with various professional medical backgrounds are present and available to the patients each day.  This results in a staff to patient ratio of greater than one-to-one and is entirely inconsistent with a group home facility located in a residential zone district but consistent with a rehabilitation facility.

- The treatment elements of the program at the Spruce Road facility are extensive, including: EEG neurotransmitter, vitamins, therapy of several types, cognitive behavior therapy, yoga, 20 hours of classes and therapy per week, titration to reduce drug dependency over time (a medical procedure which is prescribed by a doctor and administered by your staff), and sale of nutraceutical supplements both wholesale and after the patient leaves.

- You have indicated that "[Soaring Hope] has been selected by Drexel University in Philadelphia, Pennsylvania as a training site for Ph.D. Nurse Practitioners," and two to four interns associated with Drexel University are present at the facility to observe and learn but are not involved in care. This is an example of a non-group home activity, but one which may well take place in a rehabilitation facility.

(*Id.* at 2–4.)  Based on his decision, Mr. Dossey provided Soaring Hope three options:

> (i) you may appeal my interpretation of the LDC to the Board of County Commissioners by submitting a formal letter of appeal to me as DSD Executive Director identifying and supporting the basis for your belief that this decision is in error, the cost of which is $887.00; or (ii) you may apply for a variance of use under LDC Section 5.3.4, the cost of which is $4,237.00; or (iii) you may bring the use into compliance with the Code by eliminating the rehabilitation facility uses and bringing the use and number of residents into compliance with a group home use.

(*Id.* at 4.)  He further stated that because the facility is in violation of the LDC, "an

enforcement file has been opened."  (*Id.*)  However, he noted that the County "will defer

enforcement of this illegal use pending your determination of whether to bring the use into compliance with the Code, apply for a variance, or file an appeal of my interpretation to the Board of County Commissioners.  You must do one of these things prior to the 30 days from the date of the letter" (*i.e.*, by August 11, 2016).  (*Id.*)

The next day, on July 13, 2016, Dr. Miller sent a letter Mr. Dossey stating as follows:

> [W]e fully agree with you that our land use request is categorized as a rehabilitation facility (for addiction which has been determined by the American Disability Act as a disability).  We have never been, nor do we wish to be, a group home for handicapped or disabled persons, and I have been puzzled through this application process about why we were considered a group home rather than a rehabilitation facility.

(ECF No. 104 at 13–14, ¶ 60; ECF No. 106-19 at 1.)  She then requested, in lieu of returning Soaring Hope's application fee, that the County consider the Spruce Road Property as a rehabilitation facility.  (ECF No. 106-19 at 1.)

On August 4, 2016, Dr. Miller sent a letter to Mr. Gebhart stating, "[y]ou did an outstanding job explaining to us that a residential rehabilitation center does not qualify as a sober living group home and therefore needs an 'A' designation and should be located in a multifamily or commercial zoned (CC, CR, CS, C-1, C-2, M) location if we stay within your jurisdiction."  (ECF No. 104-29; ECF No. 104 at 14, ¶ 61.)

In a letter dated August 11, 2016, Dr. Miller stated that Soaring Hope "decided to follow you[r] third option, i.e., take our Soaring Hope rehabilitation (therapy sessions) to a commercial office/conference room. . . . By September 1, 2016, we will be transporting our clients to the West End Center in Monument."  (ECF No. 104-31; ECF

No. 105 at 12, ¶ 58.)  Plaintiffs claim that the County did not respond to either of these letters.[4]  (ECF No. 105 at 12, ¶ 60.)

6.      Notice of Violation

The County issued a notice of violation to Soaring Hope on August 31, 2016. (ECF No. 105 at 12, ¶ 61; ECF No. 104-33 at 1.)  The County describes the violations as (1) operation of a Rehabilitation Facility, where such is not an allowed use in the RR-0.5 (Residential Rural) zone district; and (2) failure to submit a timely application in response to the determination made by the Executive Director that the existing facility and operations are classified under the zoning as a Rehabilitation Facility.  (ECF No. 104-33 at 1.)

On September 23, 2016, Soaring Hope sent the County a letter informing it that it has "moved the Addition Recovery Therapeutic component to the West End Office center."  (ECF No. 105 at 13, ¶ 64; ECF No. 104-34 at 1.)

On October 12, 2016, the County sent a letter to Soaring Hope, informing them that a public hearing would be held on October 18, 2016 to determine if Soaring Hope is in violation of the County's zoning regulations.  (ECF No. 105 at 13, ¶ 65ECF No. 104-35.)

_____

[4] The Court finds that this assertion is contradicted by correspondence provided by the County.  In an e-mail dated August 10, 2016, Mr. Gebhart reminded Dr. Miller that "[t]o stay at the Spruce Road location, by August 11, 2016 you must eliminate the rehabilitation facility uses and bring the use and number of residents into compliance with a group home use with 5 or less handicapped or disabled persons. . . . We would request that you provide written confirmation by August 17, 2016 of compliance with the regulations including elimination of the rehabilitation facility uses."  (ECF No. 104-30 at 1.)

7.     The October 18, 2016 Hearing and Stipulation

Prior to the October 18, 2016 public hearing, the County "contacted Mr. Green regarding the parameters of an expected stipulation between [Soaring Hope] and the County."  (ECF No. 104 at 16, ¶ 71.)

According to the October 18, 2016 El Paso Board of County Commissioners' Minutes, the County and Soaring Hope agreed upon a stipulation ("Stipulation") in which "the applicant admit[s] to the violation as a rehabilitation facility in a residential area and curtail any rehabilitation facility uses immediately."  (ECF No. 104-37 at 2; ECF No. 104 at 17, ¶ 72.)  Soaring Hope also agreed to (1) allow "HIPAA compliant" inspections of Spruce Road Property without notice so that the county can confirm that the property is not being used as a rehabilitation facility; and (2) limit parking to three vehicles in the garage and four vehicles in the driveway.  (ECF No. 104-37 at 2; ECF No. 104 at 17, ¶ 72.)  In exchange for the Stipulation, the County agreed to (1) stay any litigation in order to bring the Spruce Road Property into compliance with the LDC; (2) give Soaring Hope until November 3, 2016 to submit a variance application and submit a list of current activities / uses at the Spruce Road Property; (3) provide copies of the public record type documents to Red Rock Ranch, Forest View Acres, and Clovenhoof Homeowners Association, including results of inspections to keep the HOA apprised of the applicant's compliance with the terms of the Stipulation.    (ECF No. 104-37 at 2; ECF No. 104 at 17, ¶ 73.)

When asked to confirm that Soaring Hope was in agreement with the terms of the Stipulation, Mr. Rick Bolin, Soaring Hope's Co-Founder and CEO, stated

> [W]e are absolutely in agreement with the stipulation that was put forward by the Staff and we greatly appreciate the opportunity to work with them to ensure that any activities in the house are appropriate and that all therapeutic activities are not taking place in the group home and are in fact taking place in the office that we have rented in the West End Center on Highway 105, just west of the Town of Monument, on the way to Palmer Lake.

(ECF No. 104-36 at 2; ECF No. 104 at 17, ¶ 74.)

In the months following the public hearing, the County conducted six inspections of the Spruce Road Property.  (ECF No. 104-43 at 2.)  Thereafter, in a letter dated February 28, 2018, the County represented that it had "determined that Soaring Hope . . . has complied with the terms of the Stipulation entered into on October 18, 2016 to stay further enforcement action regarding the zoning violation for operating a rehabilitation facility at 18375 Spruce Road location, which is not allowed in the zoning district, and Stipulation has been fulfilled."  (ECF No. 104-43 at 1; ECF No. 104 at 18, ¶ 80.)  Based on the foregoing, the County decided to "clos[e] its code enforcement case for this location."  (ECF No. 104-43 at 1; ECF No. 104 at 18, ¶ 80.)

## B.    Procedural History

Plaintiffs filed this action against Red Rock Ranch, Forest View Acres, and Clovenhoof Homeowners Association ("HOA Defendants") and the County on May 10, 2018.  (ECF No. 1.)  An amended complaint was filed on January 29, 2019.  (ECF No. 62.)

Plaintiffs brings five sets of claims against the County: (1) claims for discrimination and/or disparate treatment, disparate impact, failure to provide reasonable accommodation, and interference, coercion, or intimidation under the Fair Housing Act,

42 U.S.C. §§ 3604, 3617 (Claims 1–4); (2) claims for discrimination and/or disparate treatment, disparate impact, and failure to provide reasonable accommodation under Title II of the Americans with Disability Act, 42 U.S.C. § 12132 (Claims 5–7); (3) claims for discrimination and/or disparate treatment, disparate impact, and failure to provide reasonable accommodation under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 (Claim 8–10); (4) a claim that the County violated the Equal Protection Clause, 42 U.S.C. § 1983 (Claim 11); and (5) a claim that the LDC violates the due process clause of the U.S. Constitution because it is void for vagueness and/or unconstitutionally overbroad as applied (Claim 12).

The County filed its Motion for Summary Judgment against each of Plaintiffs' claims on December 6, 2019.  (ECF No. 104.)  Plaintiffs filed their response on December 27, 2019 (ECF No. 108), and the County filed its reply on January 17, 2020 (ECF No. 116.)

Plaintiffs also filed a Partial Motion for Summary Judgment on December 6, 2019.[5]  (ECF No. 105.)  The County filed its response on December 20, 2019 (ECF No. 107), and Plaintiffs filed their reply on January 20, 2020 (ECF No. 117).

On December 31, 2019, Plaintiffs and the HOA Defendants filed a stipulated motion to dismiss, in which the parties agreed to dismiss the claims against the HOA Defendants with prejudice.  (ECF No. 109.)  The Court granted the stipulated motion to

---

[5] Plaintiffs' Partial Motion for Summary Judgment does not specify which claims it is seeking summary judgment for.  Upon review of Plaintiffs' Motion, the Court interprets the Motion to be seeking summary judgment on their claims of intentional discrimination, disparate impact, and failure to provide reasonable accommodation under the Fair Housing Act (Claims 1–3), as well as their constitutional challenge to the County's definition of a Rehabilitation Facility (Claim 12).

dismiss on January 6, 2020, and dismissed the HOA Defendants from the case on that day.  (ECF No. 114.)

## III.  ANALYSIS

### A.    Classification of the Spruce Road Property As a Rehabilitation Facility

Because many claims turn on the County's classification of the Spruce Road Property as a Rehabilitation Facility, the Court begins with an analysis of whether the property is a Rehabilitation Facility (as the County contends) or a Group Home (as Plaintiffs contend).  After careful consideration of the Parties' submissions and documentary evidence, the Court finds that there is no genuine dispute that the Spruce Road Property was anything but a Rehabilitation Facility in 2016.

Notably, during the El Paso County Board of County Commissioners' hearing on October 18, 2016, Soaring Hope and the County agreed on the Stipulation, by which Soaring Hope "admit[ted] to the violation [of the LDC] as a rehabilitation facility in a residential area."  (ECF No. 104-37 at 2.)  Plaintiffs now attempt to walk back their admission by claiming the Stipulation is inadmissible at trial because it is "a legal conclusion, a statement of opinion and not fact, and was not voluntarily made."  (ECF No. 108 at 8, ¶ 72.)  This argument is without merit because Federal Rule of Procedure 56(c) explicitly contemplates that a party may support an assertion by citing to "depositions, documents, . . . *stipulations* (including those made for purposes of the motion only),  *admissions* . . . ."  Fed. R. Civ. P. 56(c)(1)(A) (emphasis added); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097 (10th Cir. 1991) ("A stipulation is an admission which cannot be disregarded or set aside at will.").  While stipulations may be withdrawn "to prevent manifest injustice," this Court is "vested with broad discretion in determining

15

whether to hold a party to a stipulation or whether the interests of justice require that the stipulation be set aside." *Id.* at 1098.

Plaintiffs now argue that Soaring Hope did not enter into the Stipulation voluntarily. (ECF No. 108 at 8, ¶ 72.) This argument, however, is undermined by statements made by Mr. Bolin, Soaring Hope's co-founder and CEO, during the October 18, 2016 public hearing. (ECF No. 104 at 160, ¶ 70.) At the time, Mr. Bolin was asked to acknowledge that he was in agreement with the Stipulation's terms. He replied,

> [W]e are absolutely in agreement with the stipulation that was put forward by the Staff and we greatly appreciate the opportunity to work with them to ensure that any activities in the house are appropriate and that all therapeutic activities are not taking place in the group home and are in fact taking place in the office that we have rented in the West End Center on Highway 105, just west of the Town of Monument, on the way to Palmer Lake.

(ECF No. 104-36 at 2.) In light of Mr. Bolin's statement regarding the Stipulation, the Court finds that the Stipulation was clearly voluntary. As such, it sees no reason why it should not hold Soaring Hope to its admission that it was a Rehabilitation Facility.

Even if the Court were to ignore the parties' Stipulation and Mr. Bolin's statement, however, the Court would still be left with Dr. Miller's July 13, 2016 letter to the County, in which she wrote

> [W]e fully agree with you that our land use request is categorized as a rehabilitation facility (for addiction which has been determined by the American Disability Act as a disability). *We have never been, nor do we wish to be, a group home for handicapped or disabled persons*, and I have been puzzled through this application process about why we were considered a group home rather than a rehabilitation facility."

(ECF No. 106-19 (emphasis added).)  Like the Stipulation, Dr. Miller's letter—which was written on Soaring Hope's letterhead—contains a decisive admission that the Spruce Road Property is a Rehabilitation Facility.[6]  Plaintiffs offer no reason why a reasonable factfinder should not credit Dr. Miller's statement, and the Court sees none.

Moreover, in a letter dated July 12, 2016, Mr. Dossey, the Executive Director of the County's Development Services Department who is "charged with interpretation of the LDC by Code Section 2.2.4(B)," concluded that the Spruce Road Property was a Rehabilitation Facility for zoning purposes.  (ECF No. 104-12 at 2.)  In making this determination, he focused on the following factors:

•  Medically assisted drug and alcohol dependence rehabilitation is clearly the primary purpose of patients' stay at the Spruce Road facility, not an incidental aspect of a residential use.

•  [Dr. Miller's] statement in correspondence dated March 21, 2016, that the Spruce Road facility is an addiction recovery program, not a sober living or traditional group home. [She] also state[s] in [Soaring Hope's] application that "[t]he home is currently in use for therapeutic services for addiction."

•  [Soaring Hope's] materials and the application consistently describe the person in residence at the Spruce Road facility as either "patients" or "clients," and that they receive treatment."

•  As described in the application, 10 to 15 staff with various professional medical backgrounds are present and available to the patients each day.  This results in a staff to patient ratio of greater than one-to-one and is entirely inconsistent

---

[6] The statements by Dr. Miller and Mr. Bolin are admissible for the truth of the matter asserted pursuant to Federal Rule of Evidence 801(d)(2)(D).  As co-founders of Soaring Hope, both individuals are undisputedly agents of Soaring Hope.  Moreover, at the time each individual made the statements about the Spruce Road Property, they were both acting within the scope of their employment and on behalf of Soaring Hope.

with a group home facility located in a residential zone district but consistent with a rehabilitation facility.

- The treatment elements of the program at the Spruce Road facility are extensive, including: EEG neurotransmitter, vitamins, therapy of several types, cognitive behavior therapy, yoga, 20 hours of classes and therapy per week, titration to reduce drug dependency over time (a medical procedure which is prescribed by a doctor and administered by your staff), and sale of nutraceutical supplements both wholesale and after the patient leaves.

- [Soaring Hope] ha[s] indicated that "[it] has been selected by Drexel University in Philadelphia, Pennsylvania as a training site for Ph.D. Nurse Practitioners," and two to four interns associated with Drexel University are present at the facility to observe and learn but are not involved in care.  This is an example of a non-group home activity, but one which may well take place in a rehabilitation facility.

(ECF No. 104-12 at 2–4.)  He concluded, "[t]aken together, these treatment elements and programs, while laudable and doubtless very useful to the patients at the facility . . . render the operation a rehabilitation facility rather than merely a residential group homes for persons suffering from disability." (*Id.* at 4.)  The Court agrees.  The descriptions of the Spruce Road Property's services and operations align with the description of a "institutional use-type facility . . . providing accommodation, treatment and medical care for patients suffering from alcohol or drug-related illness." (*Id.* at 2.)

The Court further notes that to the extent Soaring Hope believed that the County's application of the LDC was erroneous, it was given the option of "appeal[ing] [Mr. Dossey's] determination of the LDC to the Board of County Commissioners by submitting a formal letter of appeal . . . supporting the basis for [its] belief that this decision is in error." (*Id.* at 4.)  Soaring Hope did not appeal the County's conclusion.

Thus, upon consideration of the Stipulation, the Parties' statements, an analysis of the Spruce Road Property's services, and Plaintiffs' decision to not appeal the County's findings, the Court finds that no reasonable fact finder could conclude that the Spruce Road Property was, at any time relevant to the claims in this action, a Group Home.[7]  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

With this fact in mind, the Court will consider each of the Parties' arguments below.

**B.    Claims under the FHA, RA, and ADA**

The Fair Housing Act ("FHA") prohibits discrimination

> against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of
>
> > (A) that person; or
> >
> > (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or
> >
> > (C) any such person associated with that person.

---

[7] The County's February 26, 2015 letter stating that the Spruce Road Property was classified as a Group Home for Handicapped or Disabled Persons does not detract from the Court's factual finding on this point.  (ECF No. 106-15.)  That determination was made "[b]ased upon the representations of Judith Miller in the attached letter"—which, significantly, Plaintiffs did not annex to the Exhibit.  (*Id.*)  Moreover, the Court finds that the 2015 letter does not create a factual dispute in light of Plaintiffs' admissions in 2016.

42 U.S.C. § 3604(f)(2).  "[D]iscrimination includes ... a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ."  42 U.S.C. § 3604(f)(3)(B).  The FHA's prohibitions apply to discriminatory zoning practices.  *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1498 (10th Cir.1995).

The Parties agree that a recovering addict's participation in a supervised drug rehabilitation program meets the definition of a "handicap" under the FHA.  *See e.g.*, *United States v. Southern Management Corp.*, 955 F.2d 914, 921–22 (4th Cir. 1992) (FHA protects "individuals who are participating in a treatment program"); *City of Edmonds v. Oxford House, Inc.*, 18 F.3d 802, 804 (9th Cir. 1994).  They disagree, however, about whether the County discriminated against Plaintiffs on the basis of this handicap.

Plaintiffs claim that the County violated the FHA by: (1) intentionally discriminating against Plaintiffs; (2) creating policies that have a disparate impact on Plaintiffs; (3) failing to provide Plaintiffs' with reasonable accommodation; and (4) engaging in interference, coercion, or intimidation.  (Claims 1–4.)  Defendants have moved for summary judgment with respect to each of Plaintiffs' claims.  Plaintiffs have, likewise, moved for summary judgment with respect to their FHA claims for intentional discrimination, disparate impact, and failure to provide reasonable accommodation.

Plaintiffs have also brought claims for disparate treatment/intentional discrimination, disparate impact, and reasonable accommodation under Title II of the

Americans with Disabilities Act ("ADA") (Claims 5–7),[8] and the Rehabilitation Act ("RA") (Claims 8–10).[9]  The parties agree that for purposes of their cross Motions for Summary Judgment, the same analysis applies for Plaintiffs' claims under the FHA, ADA, and RA. (ECF No. 104 at 36–37; ECF No. 108 at 34.)  As such, the Court's analysis and judgment with respect to each of Plaintiffs' claims under the FHA will apply with equal force to Plaintiffs' claims under the ADA and RA, unless explicitly stated otherwise.

    1.    <u>Intentional Discrimination</u>

There are two ways to prove intentional discrimination under the FHA.  First, a plaintiff may provide direct evidence of a defendant's discriminatory intent.  *See Cinnamon Hills Youth Crisis Center, Inc. v. St. George City*, 685 F.3d 917, 919 (10th Cir. 2012).  Under this scenario, "a plaintiff makes out a prima facie case of intentional discrimination under the FHA[] merely by showing that a protected group has been subjected to explicitly differential—i.e. discriminatory—treatment."  *Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1501 (10th Cir. 1995).

---

[8]  Like the FHA, the ADA "provide[s] a clear a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.  42 U.S.C. § 12101(b)(1).  To maintain a claim under Title II of  the ADA specifically, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) who was subjected to discrimination by a public entity; (3) by reason of his disability.  *See St. Paul Sober Living, LLC v. Board of County Com'rs*, 896 F. Supp. 2d 982, 986 (D. Colo. 2012); *see also Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002) (recognizing that the ADA encompasses zoning decisions by local government entities).

[9] "The Rehabilitation Act is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance."  *Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481, 483 (7th Cir. 1997), *abrogated on other grounds as recognized in Erickson v. Board of Govs.*, 207 F.3d 945 (7th Cir. 2000); *Roe v. Hous. Auth. of the City of Boulder*, 909 F. Supp. 814, 820–21 (D. Colo. 1995) (recognizing FHA and RA claims under the same standards).

Second, a plaintiff can establish a prima facie case by pointing to circumstantial evidence and invoking the burden shifting scheme as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Cinnamon Hills*, 685 F.3d at 919.  To avoid summary judgment under this framework, a plaintiff must first establish a *prima facie* case of discrimination and, assuming the defendant proffers a facially nondiscriminatory reason for its actions, then produce evidence demonstrating that proffered reason was pretextual.  *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) ("If the plaintiff succeeds in showing a prima facie case and presents evidence that the defendant's proffered reason . . . was pretextual—i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial.").  At the summary judgment stage under the *McDonnell Douglas* framework, "a showing of pretext is evidence which allows a jury to infer discriminatory intent.  Consequently, because a jury may find illegal discrimination upon nothing more than a prima facie case and pretext, such a showing at the summary judgment stage is sufficient to get the case to the jury." *Randle*, 69 F.3d at 451.

Plaintiffs attempt to establish their *prima facie* intentional discrimination claims using both standards of proof and several theories of intentional discrimination.  The Court will analyze whether Plaintiffs have established a *prima facie* case under any theory of intentional discrimination.

a.   *Occupancy Limits for Group Homes*

Plaintiffs claim that the County has intentionally discriminated against handicapped or disabled persons by "placing an arbitrary occupancy limit of five (5) persons on group homes for protected persons, including those for handicapped or

22

disabled persons, that are not imposed on any other types of residents." (¶¶ 188(a), 227, 258–260.)[10]  In their Motion, Plaintiffs argue that these occupancy limits are *prima facie* evidence of intentional discrimination because identical occupancy limits are not imposed on non-disabled persons.  (ECF No. 105 at 22.)  In particular, within residential zoning districts,

- Group Homes for the Aged (Assisted Living Residences) have an eight-person occupancy limit as an Allowed Use;

- Family Foster homes (*i.e.*, foster homes and specialized group facilities) have an eight-person occupancy limit as an Allowed Use;

- Day Care homes have a twelve-person occupancy limit as an Allowed Use; and

- there is no occupancy limit for the number of related persons who can live together in a home.

(*Id.*; ECF No. 106-26.)  In response, the County claims that these are not "relevant comparators" because the occupancy caps of Group Homes for the Aged and family care homes are set by statute, not by the County.  (ECF No. 107 at 10 (citing C.R.S. §§ 26-6-101 (child care centers and family care centers); § 30-28-115(2)(b)(II) (group homes for the aged)).)  Instead, the County argues that the occupancy caps for Group Homes are not discriminatory because the caps are set to the same levels that apply to unrelated, non-disabled individuals living together in a single-family person dwelling.[11]  (ECF No. 104 at 24.)

---

[10]  Citations to paragraph numbers, without more, e.g. (¶__), are to paragraphs in Plaintiffs' First Amended Complaint and Jury Demand.  (ECF No. 62.)

[11]  The County also argues that Plaintiffs' claims related to the 2014 Amendments of the LDC are time barred.  (ECF No. 104 at 40.)  It fails, however, to cite relevant case law supporting its argument that Plaintiffs can no longer challenge the LDC.

There may well be rational explanations for the different occupancy levels. However, there is no doubt that the ordinance for Group Homes imposes different occupancy levels for handicapped persons than for other types of group homes.  This is sufficient to make out Plaintiffs' *prima facie* claim for intentional discrimination under the FHA.[12]  *See Bangerter*, 46 F.3d at 1501 n.16 ("There is no need to probe for potentially discriminatory motive circumstantially, or to apply the burden-shifting approach outlined in [*McDonnell Douglas*] as the statute discriminates on its face by allowing conditions to be imposed on group housing for the handicapped which would not be permitted for non-handicapped group housing.").  As such, the County's Motion for Summary Judgment as to this theory of discrimination is denied.

However, as Plaintiffs admit in their Motion, "[o]ccupancy limits are not a per se violation of the FHA, as long as they are tied to legitimate governmental concerns and not based on the person[']s status as handicapped."  (ECF No. 105 at 24.)  Thus, because a reasonable factfinder could find that the different occupancy levels are based on *bona fide* governmental concerns, the Court will also deny Plaintiffs' cross Motion for Summary Judgment as to this theory of intentional discrimination.

      b.     *The County's Finding that Soaring Hope was a Rehabilitation Facility*

Plaintiffs argue that the County engaged in intentional discrimination when it "arbitrarily and capriciously determine[ed] that Soaring Hope was [a] 'Rehabilitation Facility' and not a 'Group Home for Handicapped or Disabled Persons'" and

_____

[12] Likewise, the Court finds that the Group Standards Applicable Only to Group Homes for the Disabled (ECF No. 106-29) also set forth standards for Group Homes that are not imposed on other types of residents.  As such, Plaintiffs' claims for intentional discrimination predicated on these standards likewise survive summary judgment.

"discriminat[ed] against handicapped or disabled persons" by denying Soaring Hope's 2016 Special Use Permit Application.  (¶¶ 188(c)–(d), 261.)

The County moves for summary judgment as to these theories of intentional discrimination.  In particular, it argues that this claim is unfounded in light of "Dr. Miller's own admission [that Soaring Hope] was operating a rehabilitation facility not a group home at the Spruce Road location."  (ECF No. 104 at 23.)  The Court agrees.

As the Court concluded in Part III.A, the fact that the Spruce Road Property was properly categorized as a Rehabilitation Facility is beyond genuine dispute.  And as a Rehabilitation Facility, Plaintiffs were not entitled to a Special Use Permit in the zoning district.  Plaintiffs are therefore unable to establish a *prima facie* case of discrimination under theories relating to (1) the County's determination that the Spruce Road Property was a Rehabilitation Facility; and (2) the County's denial of Soaring Hope's Special Use Permit.  The Court will therefore grant Defendant's Motion for Summary Judgment as to these theories of intentional discrimination.

c.   <em>Zoning Restrictions for Rehabilitation Facilities</em>

Plaintiffs claim that the County intentionally discriminated against them by "amend[ing] the LDC to effectively zone out all 'Rehabilitation Facilities' in El Paso County which includes persons who are handicapped or disabled and protected by the FHA."  (¶¶ 188(g)–(i), 260.)

The County moves for summary judgment on claims relying on this theory of discrimination, arguing that the LDC has not zoned out Rehabilitation Facilities.  (ECF No. 104 at 26.)  It points out that Rehabilitation Facilities are an "Allowed Use" in all three commercial zoning districts in the County, an "Allowed Use" in three of the

County's four obsolete zoning districts, and are a "Special Use" in two of the County's residential, multi-family zoning districts (RM-12 and RM-30).  (*Id.*)  Moreover, when located within a zoning district that allows for Rehabilitation Facilities, there are no occupancy caps for such facilities.[13]

Plaintiffs do not contest these facts.  Nor do they identify any other treatment facilities that are allowed to operate within a single-family residential zoning district.  *See Cinnamon Hills*, 685 F.3d at 923 ("[W]hen there is no comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality in any sense.").  As such, the Court will grant Defendant's Motion for Summary Judgment as to this theory of intentional discrimination.

d.   *Parking Limitations and Inspections*

Finally, Plaintiffs claim that the County intentionally discriminated against them by "imposing unreasonable and arbitrary conditions" through the Parties' Stipulation, "such as inspection and parking limitation on Soaring Hope" and "demand[ing] that Soaring Hope account for events and provide explanations about activity at the Spruce Road [Property]."  (¶¶ 188(e)–(f).)

In its Motion, the County argues that the Stipulation's conditions were neither unreasonable nor arbitrary in light of Soaring Hope's admission that it was operating a Rehabilitation Facility in violation of the LDC.  (ECF No. 104 at 31.)  In response, Plaintiffs argue that these conditions are *prima facie* proof of discrimination because

---

[13] Because Rehabilitation Facilities do not have an occupancy cap when operating within a permitted zoning district, there is an argument that such facilities are afforded *preferential* housing opportunities as compared to Group Homes, which are limited to five to ten residents.

these conditions "are not imposed on other homes or religious institutions."  (ECF No. 108 at 22.)

Plaintiffs' argument misses the mark.  As established in Part III.A of this Order and admitted by Soaring Hope on multiple occasions, the Spruce Road Property was a Rehabilitation Facility that was in violation of the County's zoning restrictions.  It entered into a negotiated Stipulation in which it *agreed* to these conditions *in exchange* for the County's agreement to stay any enforcement action against Plaintiffs.  (*See* ECF No. 104-36 at 2 (when asked whether he agreed to the conditions, Soaring Hope's CEO and co-founder responded, "[W]e are absolutely in agreement with the stipulation.").)

The Court finds that Plaintiffs have failed to establish evidence by which a reasonable factfinder could conclude that these restrictions evidenced the County's discriminatory intent.  As such, the Court will grant Defendant's Motion for Summary Judgment as to this theory of intentional discrimination.

2.    Disparate Impact

To establish a disparate impact claim, a plaintiff must demonstrate that "a specific policy caused a significant disparate effect on a protected group."  *Cinnamon Hills,* 685 F.3d at 922.  This is generally shown by "statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect was caused by the challenged policy and not other causal factors."  *Id.* (Internal quotation marks omitted).  A plaintiff has not met its burden if it merely raises an inference of discriminatory impact.  *See Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997).

Plaintiffs allege several theories in support of their claim that the County's actions had a disparate impact on handicapped or disabled persons.  The Court will consider each theory below.

> a.   *Occupancy Limits for Group Homes*

Plaintiffs argue that the County caused a disparate impact on handicapped or disabled persons when it "[p]laced an arbitrary occupancy limit of five (5) persons on group homes for protected persons."  (¶¶ 198(a), 237–240, 270–272.)

In support of these theories of their disparate impact claims, Plaintiffs provide an affidavit from Dr. Miller stating that "[i]f Soaring Hope had been permitted to house up to ten persons instead of five, it could have provided an estimated 60 more persons with housing each year (300 since 2014)."  (ECF No. 106-1 at 3, ¶ 21.)  In response, the County argues that Plaintiffs are merely speculating about the number of additional residents Soaring Hope could have accommodated.  (ECF No. 116 at 10.)  The Court agrees with the County.

Plaintiffs have not provided statistical evidence about the total number of residents that Soaring Hope could accommodate in a year based on a resident's average length of stay.  Nor have they provided evidence about the demand for Soaring Hope's services.  (*See* ECF No. 107-1 at 277 (Dr. Miller admitted in her deposition that the number of residents has historically fluctuated; it could be "as low as three," "but mostly eight or five."); ECF No. 104-26 at 8 ("Our ideal population would be 8-9 [clients].").)  Without evidence supporting the actual number of residents that Soaring Hope could accommodate, or evidence that the County has *ever* denied a Group Home's application for a Special Use Permit following the 2014 amendments to the

28

LDC,[14] the Court is unable find *prima facie* evidence of a disparate effect that was "caused by the challenged policy and not other causal factors."[15] *Cinnamon Hills*, 685 F.3d at 922.

Because Plaintiffs have failed to provide any evidence that the County's zoning ordinances had a significant disparate effect on recovering addicts, the Court will grant summary judgment to Defendant for any claims relying on this theory of disparate impact.

> b.      *Zoning Restrictions for Rehabilitation Facilities*

Plaintiffs further claim that the County has caused a disparate impact by amending the LDC to "effectively zone out all Rehabilitation Facilities" and "effectively zon[e] out living for handicapped or disabled persons through enforcement of enforcement of the of the overly inclusive and arbitrary definition of Rehabilitation Facility."  (¶¶ 198(d)–(f).)

The County argues that "Plaintiffs cannot establish the elements of their disparate impact claim . . . because they cannot prove, through statistical evidence or otherwise, that the County's neutral practices ha[ve] a significantly adverse or disproportionate

---

[14]   Plaintiffs may not use the County's 2016 denial of Soaring Hope's Special Use Permit to establish this evidence because, as explained in Part III.A of this Order, the Spruce Road Property was not operating as a Group Home at the time.  *See Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006) ("In assessing whether a plaintiff has established a prima facie case [of disparate impact], it is, of course, irrelevant what happens to those who do not qualify for consideration.").  Of course now that the Spruce Home Property has moved its treatment operations and is operating as a Group Home, it could increase its capacity to ten residents if applies for—and receives—a Special Use Permit.  Plaintiffs have not, however, filed such an application.  To the extent Plaintiffs' disparate impact theory rests on the denial of Soaring Hope's Special Use Permit, the Court grants summary judgment in favor of the County.

[15]   Plaintiffs have likewise failed to provide any evidence of disparate impact as a result of the County's "standards applicable only to group homes."  (¶ 198(b).)  Accordingly, the Court will grant summary judgment in favor of the County as to this theory of disparate impact.

impact on them."  (ECF No. 104 at 33.)  Here, Plaintiffs have provided the Court with no evidence that the County's zoning ordinances have "effectively zone[d] out" all Rehabilitation Facilities or Group Homes, which, in turn, has had a discriminatory impact on recovering addicts.  The Court will therefore grant summary judgment to the County as to this theory of disparate impact.

3.   Failure to Provide Reasonable Accommodation

As to persons with a "handicap," the FHA makes it unlawful to "refus[e] to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

> To state a claim of discrimination under the FHA for failure to accommodate, a plaintiff must show: (1) that the plaintiff or his associate is handicapped as defined by the FHA; (2) that the defendant knew or reasonably should have known of the claimed handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendants refused to make such accommodation.

*Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016).

"The duty to make a reasonable accommodation does not simply arise from the fact that the handicapped person wants such an accommodation made."  *Arnal*, 226 F. Supp. 3d at 1186.  Indeed, "when there is no comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality of opportunity in any sense."  *Cinnamon Hills*, 685 F.3d at 923; *McKivitz v. Township of Stowe*, 769 F. Supp. 2d 803, 826 (W.D. Pa. 2010) ("It does not follow, however, that the FHA provides handicapped individuals with the prerogative

to live in a particular home of his or her choosing, regardless of the applicable zoning regulations.")

Both Parties seek summary judgment regarding the reasonable accommodation claim. Plaintiffs claim that the County failed to provide reasonable accommodation to Soaring Hope when it denied Soaring Hope's Special Unit Permit. (¶¶ 206, 248, 280.) The County, on the other hand, argues that Plaintiffs' reasonable accommodation claim fails "because [Soaring Hope] was seeking a housing opportunity that was not available to others." (ECF No. 104 at 34.)

As explained in Part III.A of this Order, a Rehabilitation Facility is not permitted as either an Allowed Use or Special Use in the relevant zoning district. As a result, the County's denial of Soaring Hope's Special Use application cannot be considered a failure to accommodate since Plaintiffs were seeking an opportunity which was wholly unavailable to Soaring Hope.[16] Thus, Plaintiffs have failed to establish that the "accommodation is reasonable." *See Arnal*, 226 F. Supp. 3d at 1183.

With respect to Plaintiffs' reasonable accommodation claims, the Court will therefore deny Plaintiffs' Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment.

4.    Section 3617 Claim

The FHA makes it unlawful "to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the

---

[16] Soaring Hope could have filed an application for a variance to be excused from the LDC. If Soaring Hope had done so, it may have had a viable reasonable accommodation claim. However, it did not pursue this option.

exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.

To establish a *prima facie* claim under § 3617, a plaintiff must demonstrate the following:

> (1) she is a member of a protected class under the Fair Housing Act; (2) she exercised or enjoyed aright protected by [the FHA], or aided or encouraged others in exercising or enjoying such rights; (3) intentional discrimination motivated defendants' conduct, at least in part; and (4) defendants' conduct constituted coercion, intimidation, a threat or interference on account of plaintiff having exercised, or aided or encouraged others in exercising, a right protected under [the FHA].

*Carrillo v. Hickenlooper*, 2014 WL 1977984, at *20 (D. Colo. May 14, 2014).

The County argues that Plaintiffs cannot establish the elements of this claim because they "cannot prove that the County's conduct was motivated by intentional discrimination and/or that its conduct constituted a prohibited act on account of Plaintiffs' exercise of a protected right."  (ECF No. 104 at 35.)  The Court agrees.

As a Rehabilitation Facility, Spruce Road Property was in violation of the relevant zoning ordinances, and the County was within its rights to bring an enforcement action against Soaring Hope.  In these circumstances, the County's decision to open an enforcement action in response to Plaintiffs' zoning violation is neither intimidation nor interference.

Plaintiffs claim that "Soaring Hope provided evidence to the County that it had removed its 'rehabilitation facility activities' yet the County proceeded with a hearing to determine whether or not the Plaintiffs were in violation of the LDC."  (ECF No. 108 at 31.)  This is an incomplete, and therefore inaccurate, portrayal of the relevant events.

On July 12, 2016, the County stated that it would "defer enforcement of [Plaintiffs'] illegal use" of the Spruce Road Property for 30 days so that Plaintiffs could "bring the use into compliance with the Code, apply for a variance of use, or file an appeal of [the County's] interpretation the Board of County Commissioners." (ECF No. 104-12 at 4.)  There is no evidence that Plaintiffs moved its operations by the August 11, 2016 deadline.  Thus, even if Soaring Hope had later removed its rehabilitation facilities activities, the County was still within its rights to schedule a violation hearing.

Nor is the fact that the County asked Plaintiffs to agree to conditions in the Stipulation evidence of interference, coercion, or threats.  To the contrary, Plaintiffs' admissions confirm that Soaring Hope voluntarily agreed to the conditions in the Stipulation *in exchange for* the County's agreement to defer enforcement of Soaring Hope's zoning violations.

Thus, the Court finds that Plaintiffs are unable to make out a *prima facie* claim under 42 U.S.C. § 3617.  The County is therefore entitled to summary judgment on this claim as well.

**C.   Constitutional Challenge to LDC's Definition of "Rehabilitation Facility"**

Plaintiffs allege that the County's definition of "Rehabilitation Facility" is unconstitutional because it is impermissibly vague, overbroad, and encourages arbitrary and capricious enforcement.  (¶¶ 291–309).  Both Parties seek summary judgment as to this claim.

The Supreme Court has explained that laws must not fail to "give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (citing

33

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)).  "A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."  *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *Chicago v. Morales*, 527 U.S. 41, 56–57 (1999)).  Plaintiffs invoke both rationales.

1.     Failure to Ascertain Meaning

To succeed on a facial vagueness challenge, a plaintiff must "demonstrate that the law is impermissibly vague in all of its applications."  *Vill. of Hoffman Estates*, 455 U.S. at 498.  In determining whether an ordinance is unconstitutionally vague, a court looks to the law as a whole to determine whether a person of ordinary intelligence may be able to ascertain the meaning of the challenged terms.  *See Grayned*, 408 U.S. at 110; *Mini Spas, Inc. v. S. Salt Lake City Corp.*, 810 F.2d 939, 942 (10th Cir. 1987) ("A statute violates due process if it is so vague that a person of common intelligence cannot discern what conduct is prohibited, required, or tolerated.").   "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather, the indeterminancy of precisely what that fact is."  *United States v. Williams*, 553 U.S. 285, 306 (2008).

The County has defined a "Rehabilitation Facility" as "[a]n institutional use-type facility, and not a group home, whether public, quasi-public, not-for-profit, providing accommodation, treatment and medical care for patients suffering from alcohol or drug-related illness."  (ECF No. 106-8 at 5.)

Plaintiffs contend that this definition is impermissibly vague because "there is absolutely nothing that would put anyone on notice of what activities are permissible" for "group home" activities and those that are prohibited as "rehabilitation facility activities." (ECF No. 105 at 29.)  The County, on the other hand, argues that the definition for a Rehabilitation Facility is not vague because it is "intended to cover intensive, clinical and medical type uses."  (ECF No. 104 at 39–40.)

After considering Parties' arguments, the Court finds that the definition of a Rehabilitation Facility is not unconstitutionally vague.  Although the definition does not define the precise medical treatments that would render a facility a Rehabilitation Facility, it is clear that the definition hinges on whether a party provides "accommodation, treatment and medical care for patients suffering from alcohol or drug-related illness."  This is sufficiently clear for a person of ordinary intelligence to understand.

It appears that this definition was sufficiently clear to Plaintiffs as well.  After all, Soaring Hope's co-founders admitted on numerous occasions that the Spruce Road Property fell within the definition of a Rehabilitation Facility.  (*See, e.g.*, ECF No. 106-19 ("[W]e fully agree with you that our land use request is categorized as a rehabilitation facility . . . . We have never been, nor do we wish to be, a group home for handicapped or disabled persons, and I have been puzzled through this application process about why we were considered a group home rather than a rehabilitation facility."); ECF No. 104-37 at 2 (Soaring Hope "admit[ted] to the violation [of the LDC] as a rehabilitation facility.").)

35

The Court will therefore deny this portion of Plaintiffs' Motion for Summary Judgment, and grant summary judgment on this claim in favor of the County because the definition of "Rehabilitation Facility" is not unconstitutionally vague.

2.      Overbreadth

Plaintiffs further claim that the definition of Rehabilitation Facility is overbroad because it encourages arbitrary and capricious enforcement.  (¶ 302.)

In their Motion for Summary Judgment, Plaintiffs allege that the County's arbitrary and capricious enforcement is evidenced by the following facts: (1) the Spruce Road Property permitted the same activities as the Appaloosa Home, which was characterized as a Group Home; and (2) the County was aware of Plaintiffs' use of the Spruce Road Property since 2015 and did not initiate enforcement proceedings until the following year.

Neither argument is sufficient to survive summary judgment.  The County's treatment of the Appaloosa Home in 2014 does not render the County's treatment of the Spruce Road Property in 2016 arbitrary or capricious, particularly when the LDC was amended during the intervening period.  The County's February 26, 2015 letter stating that the Spruce Road Property was a Group Home is similarly unpersuasive for the reasons stated in Part III.A of this Order.  Moreover, any suggestion that the County acted arbitrarily and capriciously in Plaintiffs' case is undermined by Dr. Miller's and Mr. Bolin's unequivocal agreement that the Soaring Hope Property was, in fact, a Rehabilitation Facility.

Thus, the Court will deny Plaintiffs' request for summary judgment and grant summary judgment on this claim in favor of the County because the definition of "Rehabilitation Facility" is not overbroad.

**D.     Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment guarantees that "no states shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'" *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *see Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1233 (10th Cir. 2009) ("Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).)

An equal protection claim exists "where the plaintiff alleges that she has been intentionally treated different from others similarly situated and is not rationally related to a legitimate governmental purpose."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiffs claim that the County denied Soaring Hope equal protection when it enacted occupancy limits on Group Homes that not are imposed on other residents.  As discussed in Part III.A of this Order, Group Homes for the Aged (Assisted Living Residences) have an eight-person occupancy limit; family care homes (*i.e.*, foster homes and specialized group facilities) have an eight-person occupancy limit; day care homes have a twelve-person occupancy limit; and there is no occupancy limit for the

37

number of related persons who can live together in a home.  Just as the Court found

that these facts were sufficient to make out Plaintiffs' *prima facie* claim for intentional

discrimination under the FHA, the Court also finds that a reasonable factfinder could

conclude that the County's imposition of occupancy limits discriminated against Plaintiffs

because of their disabilities, thereby depriving them of equal protection.[17]

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS that:

1.      Defendant El Paso County, Colorado's Motion for Summary Judgment (ECF No.

104) is GRANTED IN PART and DENIED IN PART as follows:

a.      Defendant's Motion for Summary Judgment is GRANTED as to Claims 2,

3, 4, 6, 7, 9, 10, and 12;

b.      Defendant's Motion for Summary Judgment is GRANTED as to certain

theories of intentional discrimination underlying Claims 1, 5, 8, and 11 as

set forth herein;

c.      Defendant's Motion for Summary Judgment is DENIED in all other

respects;

2.      At the conclusion of this action, Defendant El Paso County will be entitled to

judgment on Claims 2, 3, 4, 6, 7, 9, 10, and 12;

3.      Plaintiffs' Partial Motion for Summary Judgment Against El Paso County (ECF

No. 105) is DENIED in its entirety; and

---

[17]  To the extent, however, that Plaintiffs are alleging equal protection violations based
on the County's denial of its Special Use Permit or zoning for Rehabilitation Facilities, the Court
will grant summary judgment in favor of the County on this theory, for the reasons repeatedly
stated above.

4.      This matter REMAINS SET for a Final Trial Preparation Conference on

**September 8, 2020, at 2:00 PM**, and a 5-day jury trial commencing on

**September 21, 2020, at 8:30 AM**, both in Courtroom A801.

Dated this 31st day of July, 2020.

BY THE COURT:

William J. Martinez
United States District Judge