IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1122-WJM-KMT

JOHN GREEN,
JOAN GREEN, and
COURAGE TO CHANGE RANCHES HOLDING COMPANY, a Colorado non-profit corporation d/b/a Soaring Hope Recovery Center,

    Plaintiffs,

v.

EL PASO COUNTY, COLORADO,

    Defendant.

## ORDER DENYING PLAINTIFFS' MOTION *IN LIMINE* AND DENYING DEFENDANT'S MOTION *IN LIMINE*

Plaintiffs Courage to Change Ranches Holding Company ("Soaring Hope"), Joan Green, and John Green (collectively, "Plaintiffs") bring this action against Defendant El Paso County, Colorado (the "County") pursuant to Section 3604 of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, and the U.S. Constitution.

Before the Court is the County's Motion *in Limine*, filed August 12, 2020. (ECF No. 134.) Also before the Court is Plaintiffs' Motion *in Limine*, filed August 18, 2020. (ECF No. 143.)

The Court presumes familiarity with the facts of the case, as well as the Court's

prior orders. (ECF Nos. 130, 171.) For the reasons explained below, Plaintiffs' Motion is denied and the County's Motion is denied.

## I. LEGAL STANDARDS

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

## II. PLAINTIFFS' MOTION *IN LIMINE* (ECF No. 143)

### A.   Discussion of Other State and Local Governments' Laws

Plaintiffs seek to preclude "[a]ny discussion in opening or closing statements, questioning of witnesses, or argument regarding other state and local governments' laws." (ECF No. 143 at 2.) However, as Plaintiffs note, and as confirmed by County's response, the County does not oppose this request. (*Id.* at 1; ECF No. 149 at 1.)

Accordingly, this portion of Plaintiffs' Motion is denied as moot as there is no

underlying controversy.

**B.     Testimony About The County's Definition of a "Family" and Other Comparators for Group Homes for Handicapped or Disabled Persons**

Plaintiffs seek to preclude "[a]ny discussion in opening or closing statements, questioning or witnesses, or argument concerning" of: (1) the County's definition of a "family"; (2) Colorado state law regulation of other types of group-living homes compared to Group Homes for Handicapped or Disabled Persons; and (3) whether "other types of similarly situated group homes or group living arrangements are not 'comparators.'" (ECF No. 143 at 3–10.)  Plaintiff anticipates that the County may introduce this evidence to argue that occupancy caps set by state statute—such as for group homes for the aged and family care homes—are not relevant comparators for the occupancy limit set for Group Homes for Handicapped or Disabled Persons and that Group Homes for Handicapped or Disabled Persons are more comparable to the occupancy limit set for unrelated persons who can live together as a "family."  (ECF No. 143 at 5, 8, 10.)

Plaintiffs argue that such testimony is not relevant to the County's defenses under *Bangerter v. Orem City Corp.*, 46 F.3d 1491 (10th Cir. 1995), will create a "case within a case" problem, waste time, and confuse and mislead the jury about the legal issues in this case.  (*Id.* at 7–11.)  Plaintiffs further contend that the introduction of this testimony is at odds with the Court's Order on Summary Judgment.[1]  (*Id.* at 5, 10–11.)

---

[1] The Court disagrees.  As noted in the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Clarification and Denying Plaintiffs' Motion for Reconsideration, the Court determined that a reasonable jury *could* find that the occupancy limits for Group Homes for Handicapped or Disabled Persons constitutes evidence of intentional discrimination because

In response, the County argues that barring "all evidence related to the definition of 'family' would preclude the County from offering any explanation that its intent in regulating group homes is based on the concept that if an activity is permitted in a home occupied by a 'family' related by blood, it is likewise permitted in a group home occupied by a 'family' of unrelated individuals." (ECF No. 149 at 3.) The County likewise argues that "evidence related to the aforementioned state statutes is relevant to the extent the Plaintiffs seek to use them as comparators to the occupancy limits" for Group Homes for Handicapped or Disabled Persons. (*Id.* at 4.) The Court agrees with the County.

Plaintiffs are effectively asking the Court to preclude any argument about why the County imposed different occupancy limits for Group Homes for the Handicapped or Disabled Persons than it imposed for other types of facilities, including group homes for the aged and family care homes. Granting this request would cripple the County's defense. After all, testimony regarding state law regulation of other types of group-living homes, as well as whether the County considered these types of homes to be proper comparators for Group Homes for Handicapped or Disabled Persons, is highly relevant to the County's case that it did not intentionally discriminate against Group Homes for Handicapped or Disabled Persons. Likewise, testimony relating to the definition of "family" is related to the County's claim that it intended to regulate Group Homes for the Handicapped or Disabled Persons along the same lines as it regulated homes for a

---

these occupancy limits are different from the statutory occupancy limits for Group Homes for the Aged, Family Care Homes, and day care homes. *See* Colo. Rev. Stat. §§ 26-6-101 *et seq.*, 30-28-115(2)(b)(II). However, the Court does not discount the possibility that a reasonable jury could alternatively find that these occupancy limits are not relevant comparators to the occupancy limits for Group Homes for Handicapped or Disabled Persons as these occupancy

"family."[2]  The relevance of this information from the County's perspective significantly outweighs any danger of wasting time, confusing the issues, or misleading the jury.

Thus, Plaintiffs' request to exclude this evidence is denied.

**C.     Discussion Regarding the Spruce Road Home's Violations of the County's Zoning Ordinances**

Plaintiffs argue that "Soaring Hope ceased operating as what the County considered to be a 'Rehabilitation Facility' and began operating as a [Group Home for Handicapped or Disabled Persons] on September 1, 2016" until it closed the location on May 1, 2019.  (ECF No. 143 at 11.)  Plaintiffs contend that the "relevant timeframe for assessing the impact of the County's occupancy restrictions and 'Standards Applicable Only to Group Homes' runs September 2016 to present" and that "[t]estimony that Soaring Hope violated the [Land Development Code ('LDC')] or that the residents engaged in prohibited activities by operating a 'Rehabilitation Facility' is irrelevant, prejudicial, and otherwise inadmissible prior bad act evidence under" Federal Rules of Evidence 402, 403, and 404.  (*Id.*)  Plaintiffs likewise seek to preclude testimony from the neighborhood homeowners' association ("HOA") and its president, Elizabeth Lonnquist, regarding observations of Soaring Hope's operations and violations of the County's zoning code, communications she had with Plaintiffs, their representatives, and County officials, and complaints made to the County and others in 2016–2017.  (*Id.*

---

limits are set by state statute—not by the County.  (ECF No. 171 at 3–5.)
    [2] To the extent Plaintiffs are arguing that the County's definition of "family" should be precluded because it violates the FHA (*see* ECF No. 143 at 3–5), the Court notes that Plaintiffs have not challenged this definition.  Thus, the Court will not exclude testimony regarding the County's definition of a "family" on this basis.  Moreover, Plaintiffs effectively seek potentially dispositive relief, which is inappropriate for a motion *in limine*.

at 12.)

In response, the County states that it "agrees in principle" that evidence related to Soaring Hope's operation of a Rehabilitation Facility, the HOA, and Lonnquist's complaints and communications about Soaring Hope's operations before September 2016 "should not be relevant." (ECF No. 149 at 4–5.) Nonetheless, the County represents that it

> could not agree at this time to this portion of Plaintiffs' Motion because it is unknown how Plaintiffs will frame or describe the operations and activities of Soaring Hope before it began operating solely as a group home in September 2016. Because there is a possibility that Plaintiffs may open the door to [Soaring Hope's operation of a Rehabilitation Facility or complaints and communications by the HOA and Ms. Lonnquist], the County should not be prematurely precluded from presenting evidence regarding [the] same.

(*Id.* at 4–5.)

To the extent Plaintiffs limit their case to Soaring Hope's use of the Spruce Road Home *after* September 2016, the Court agrees in principle that evidence regarding Soaring Hope's prior violations of the LDC and complaints and communications regarding the same is irrelevant and should be excluded under Rules 402 and 403. However, determinations regarding the relevance of this testimony cannot be resolved in a vacuum outside the context of other evidence which comes in at trial. The Court will rule on any objections that Plaintiffs may assert related to these categories of information at trial.

Thus, Plaintiffs' request to exclude this evidence is denied without prejudice as premature.

### III.  THE COUNTY'S MOTION *IN LIMINE* (ECF No. 134)

In the County's Motion, it argues that the Court should bar Plaintiffs from calling the following individuals as witnesses: (1) Senior Assistant County Attorney Cole Emmons; (2) County Attorney Diana May; and (3) the County's former outside counsel, Gerald Dahl.  (ECF No. 134 at 1.)

**A.     Cole Emmons**

In the Final Pretrial Order, Plaintiffs state that they plan to call Emmons as an adverse witness to testify about the "Appaloosa Home, the 2014 Amendment, Board of County Commissioners' hearings, early assistance meetings, the Plaintiffs' alleged violations of the LDC, code enforcement proceedings against the Plaintiffs, and the stipulation and other events on October 18, 2016," as well as his "interactions and non-privileged communications among the federal government, the County, the HOA and its attorneys, members of the community and Soaring Hope."  (ECF No. 119 at 22.)

In the County's Motion, it argues that the Court should preclude Emmons from being called as a witness because he is co-counsel of record for the County and is expected to participate in the defense at trial.  (ECF No. 134 at 3.)

However, on March 11, 2021, the County filed a motion to withdraw, seeking an order permitting Emmons to withdraw as counsel on the basis that Emmons has retired from the El Paso County Attorney's Office effective March 8, 2021.  (ECF No. 175.)  As Emmons will no longer be serving as co-counsel for the County at trial, there is no need to preclude Emmons from being called as an adverse witness.

Thus, the Court denies this portion of the County's Motion as moot.

**B.     Diana May**

In the Final Pretrial Order, Plaintiffs state that they plan to call Diana May, a County attorney, to testify about "the Appaloosa Home, the 2014 Amendment, code enforcement proceedings against the Plaintiffs, communications among Soaring Hope, the County, and the U.S. Department of Justice," as well as "non-privileged letters to the U.S. Department of Justice" and "letters to Soaring Hope regarding the U.S. Department of Justice investigation."  (ECF No. 119 at 28–29.)

The County argues that May's testimony is not relevant since there is "no evidence Ms. May had any substantive involvement in the County's actions related to the 2014 LDC amendments" and, even if relevant, "her testimony will be entirely cumulative."  (ECF No. 134 at 7.)  In response, Plaintiffs argue that May "wrote letters and corresponded with the DOJ on behalf of the County regarding the 2014 Amendment, in response to the DOJ's investigation into the County's zoning code on January 29, 2014 and July 14, 2014" and was the "only author of these letters" who can "testify to and explain the contents, context, and meaning of those letters."  (ECF No. 147 at 4–5.)

It may be true that May's testimony will be needlessly cumulative at trial.  But again, the Court cannot make this determination until it sees what other evidence comes in at trial, including how Plaintiffs' other witnesses have testified.  Accordingly, this portion of the County's Motion is denied without prejudice to the County renewing this challenge at trial.

### C.  Gerald Dahl

Dahl worked as the County's special, outside counsel regarding the LDC revisions and issues related to the FHA.  (ECF No. 134 at 8.)  In the Pretrial Order, Plaintiffs have identified Dahl as a fact witness who:

> gave public testimony to the Board of County Commissioners and provided memos that are matter of public record and provided in discovery to the County regarding the proposed amendments to the LDC, including advising them of what types of amendments would and would not be acceptable under federal law.  He provided testimony, at public hearing and in publicly available documents, that the amendments to the LDC that the County desired to adopt were discriminatory and recommended against actions taken by the County.

(ECF No. 119 at 42.)

The County seeks to preclude Plaintiffs from calling Dahl as a witness, arguing that "Plaintiffs' position regarding the necessity of Mr. Dahl's testimony is patently disingenuous."  (ECF No. 134 at 9.)  They argue that "[b]y calling Mr. Dahl to testify at trial regarding his legal advice about 'what types of amendments would and would not be acceptable under federal law' and 'that the amendments to the LDC that the County desired to adopt were discriminatory,' . . . Plaintiffs seek to utilize Mr. Dahl as a vehicle to instruct the jury what conclusion to reach."  (*Id.* at 9.)  They contend that Dahl's testimony "will most certainly usurp the role of the Court in instructing the jury about the law and undoubtedly mislead and confuse the jury about the issues and the law."  (*Id.*)

In response, Plaintiffs argue that Dahl is not being offered to tell the jury what conclusion to reach in this case and is not stating his view of the law which will govern

9

the jury's verdict in this case; he is instead "only testifying to what information and advice he gave the County when it was considering the 2014 Amendment." (ECF No. 147 at 6.) They argue that "this testimony is critical for the jury's understanding of how the County got to the position it ended up with, what information the County had to have understood and taken into account, and just how much information the County had to willfully disregard in order to end up with the discriminatory amendments it ultimately passed." (*Id.*)

Upon reviewing the parties' briefs regarding the County's Motion, the Court ordered supplemental briefing on the topic of whether Dahl's anticipated testimony regarding the advice he gave to the County concerning the 2014 LDC amendments is proper testimony under Federal Rule of Evidence 701, which prohibits lay witnesses from testifying about opinions that are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." (ECF No. 170 (quoting Fed R. Evid. 701(c)).) The parties filed supplemental briefs on February 26, 2021. (ECF Nos. 172, 173.)

Rule 701 "allows lay witnesses to offer 'observations [that] are common enough and require . . . a limited amount of expertise, if any" and "can be reached by any ordinary person." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011). However, Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Id.* (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir.1979)). "[K]nowledge derived from

previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *Id.* at 1215 (citation omitted); *see also Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227–28 (3d Cir. 2008) ("[A] party simply may not use Rule 701 as an end-run around the reliability requirements of Rule 702 . . . Preventing such attempts is the very purpose of subsection (c).").

In Plaintiffs' Supplemental Response, they argue that "[a]t trial, Mr. Dahl will not testify about his specialized knowledge in federal law or provide any expert opinions on the 2014 Amendments at issue in this case." (ECF No. 173 at 3.) Instead, according to Plaintiffs, "Mr. Dahl will be testifying about information he provided in the past to the County about the County's limitations under federal law, how federal intersects [sic] with the County zoning law, and his and the County staff's recommendations for compliance with federal law. . . . Thus, Mr. Dahl is purely a fact witness regarding events and statements made leading up to the passing of the 2014 Amendments." (*Id.* at 3–4.) Plaintiffs further contend that Dahl's testimony "will assist the jury with understanding a fact at issue: whether or not the County had notice of and knowledge that the actions it took were discriminatory and disregarding this fact." (*Id.* at 4.)

Despite Plaintiffs' attempts to cast Dahl as a purely fact witness, they overlook the inextricable reality that the facts Dahl will testify about at trial contain his legal analysis, which are based on his specialized knowledge as an attorney. Because Dahl has not been designated as an expert, his testimony arguably contains impermissible opinion testimony.

Nonetheless, the Court agrees that a reasonable jury could infer from Dahl's

testimony—that he gave certain recommendations to the County that were at least partially disregarded—that the County acted with discriminatory intent when it enacted the 2014 amendments to the LDC.  Thus, Dahl's testimony regarding his recommendations is very relevant to Plaintiffs' case, and Plaintiffs would suffer significant prejudice if the Court excluded this testimony.

The Court therefore will allow Dahl to testify about the recommendations that he gave to the County.  However, counsel will not be permitted to ask questions that delve into the basis for Dahl's opinions, including his interpretation of applicable federal statutes or case law.  Nor will Dahl be permitted to give his opinions as to whether the County's LDC amendments were discriminatory or violated federal law.[3]  Moreover, to mitigate the possibility that the jury gives undue weight to Dahl's opinions, the Court will give the jury a limiting instruction after Dahl has been sworn in as a trial witness that conveys, *inter alia*: (1) the distinction between expert opinion testimony and lay opinion testimony; (2) that Dahl's opinions are not to be considered opinions of an expert; and (3) that Dahl's testimony is being introduced *solely* for the purpose of showing that his recommendations were given to the County.

Plaintiffs' counsel is directed to file their proposed limiting jury instruction, not longer than one page, that complies with the Court's Order one week before the Trial Preparation Conference.  Thereafter, counsel for both parties should be prepared to

---

[3] Even if Dahl were designated as an expert witness, such opinions would still constitute impermissible legal conclusions.  *See, e.g.*, *United States v. Oles*, 994 F.2d 1519, 1522–23 (10th Cir. 1993) ("[T]estimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case." (quoting *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988))).

discuss the proposed limiting jury instruction at the Trial Preparation Conference.

Because the Court is not precluding Dahl from testifying as a fact witness at trial, this portion of the County's Motion is denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion *In Limine* (ECF No. 134) is DENIED as set forth above;

2. Plaintiffs' Motion *In Limine* (ECF No. 143) is DENIED as set forth above; and

3. Plaintiffs shall file a proposed limiting instruction with respect to the anticipated testimony of Mr. Dahl that complies with the terms of this Order not later than **April 16, 2021**.

Dated this 12th day of March, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge